# THOMAS BESTWICK v. ORMSBY COAL CO.

## APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF MERCER COUNTY.

Argued October 15, 1889—Decided October 28, 1889.

(*a*) A coal contract, executed by trustees who had legal ownership of the coal but not of the surface, granted and conveyed all the coal under a tract of land, the grantees covenanting to mine and remove 4,000 tons of coal yearly, or pay for the same as though mined.

(*b*) The contract further provided: " The party of the first part also grant and convey to said second party, their heirs and assigns, the right of way through, over or under said land, to transport coal from adjacent lands."

(*c*) It was provided also, that the grantees, etc., " shall have the right to abandon this contract and yield up said coal mine and privileges at any time they shall determine in their judgment that said coal is in quantity, quality, or condition, no longer mineable with economy and profit."

(*d*) At a certain date, the grantees delivered to the grantors a deed of release and surrender of all the coal conveyed, and all the right, title, etc., of the grantees therein, but continued afterwards in the use of a way through the coal conveyed to coal operated by them on adjacent lands.

1. In such case, the grantees were held to account for the coal mined and removed by them from the lands granted, although when mined, etc., it was mistakenly supposed to be upon lands owned individually by one of the grantors, and was at the time paid for as such to him.

2. The grantees were bound for the payment of the annual royalty so long as they retained possession and use of the right of way, and the fact that all the coal except the ribs had been removed was no defence, the grantors having the right to have all the coal removed, the right of the surface owner not being in question.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 16 October Term 1889, Sup. Ct.; court below, No. 67 March Term 1888, C. P.

On February 24, 1888, Thomas Bestwick, trustee, brought assumpsit against the Ormsby Coal Co., Limited, for royalties alleged to be due under a mining grant, for the year 1887. Issue. On May 14, 1888, it was agreed that the cause be sub-

mitted to the decision of McMichael, J., 17th district, without a jury.

On July 3, 1888, a hearing having been had, the court Mc-Michael, J., filed the following decision:

This is an action in assumpsit brought to recover on an instalment claimed to be due from the defendant to the plaintiff, on a certain contract for the sale of certain stone coal, mining rights and privileges and facilities in, under and upon a tract of land in Mercer county, Pa.

James Bestwick, Sr., was, on January 17, 1874, the owner of the land. On that day he conveyed it to John Bestwick, George W. Brigham and James Bestwick, Jr., as trustees. Certain trusts were declared in the deed of conveyance respecting the surface of the land, and by this deed the grantor conveyed to the said trustees "all the coal in and under said farm in trust," and provided that said trustees were "further to own, control and cause to be mined all the said mineral coal in and under said entire farm, except under the present buildings thereon, and to divide all the rent and royalty arising therefrom annually into six equal shares or parts or portions," and to pay the same over to certain persons named in the deed. The deed also contained this provision, "And further, in the event of any one of said trustees dying before all the coal shall all be mined out and the rent or royalty so divided as above directed, then the survivors or survivor of said trustees shall act in the trust until the same is fully consummated and finished," etc.

John Bestwick, one of these trustees, died before May 17, 1880, the trust not then having been executed.

On May 17, 1880, James Bestwick, Jr., and George W. Brigham, the surviving trustees, made an agreement under seal with L. M. Ormsby and John J. Spearman wherein it is stipulated that "the said first party has agreed to sell, and does hereby give, grant, bargain, sell and convey unto said second party, their heirs and assigns, the following described stone' coal, mining rights, privileges and facilities, to-wit: All the stone coal lying and being in, under and upon the following land, to-wit." Then follows a description of the same land described in said trust deed, together with a full grant of mining rights, privileges and facilities upon said land. Said agree-

ment also contains the following clauses: "The party of the first part also grant and convey to said second party, their heirs and assigns, the right of way through, over or under said land to transport coal from adjacent lands. . . . . . It is mutually understood and agreed that all said rights, privileges and facilities hereby granted are to be used and conducted in a good, careful, workmanlike maner, and so as to do no unnecessary damage or injury to said coal mine, and to said land and the surface farming privileges thereof; and it is also understood and agreed that no mining shall be done under the substantial buildings of said first party on said land, nor so near thereto as to undermine or endanger the same. It is mutually agreed by the parties that the parties of the first part reserve two acres of land, of which the buildings shall be the centre. The said party of the second part, in consideration of the premises, for themselves, their heirs and assigns, covenant and agree to mine and remove from said land four thousand tons of lump and nut coal yearly after January 1, 1881, or pay for the same as though mined, but payments made in any year in excess of coal actually mined in such year shall be applied on the excess of coal mined in after years over said stipulated quantity. Said second party for themselves, their executors, administrators, heirs or assigns further covenant and agree to pay to said first party, their executors, administrators, heirs or assigns, for all lump coal mined fifteen cents per ton of 2,240 lbs. and ten cents per ton of 2,240 lbs. of nut coal shipped. All nut coal sold at the mines to be free of royalty and all slack is to be free of royalty. . . . . . It is mutually understood and agreed that said second party, their heirs or assigns, shall have the right to abandon this contract and yield up said coal mine and privileges at any time they shall determine in their judgment that said coal is in quantity, quality or condition, no longer mineable with economy and profit. And when this contract shall be ended for any reason, said second party, their heirs or assigns, shall have the right to remove all their machinery and other structures and property from said land, by paying up all arrears up to that time, and after that no more rents shall become due."

By sundry conveyances all the estate, mining rights and privileges and facilities granted by this contract to L. M. Ormsby and John J. Spearman became vested in the Ormsby Coal Com-

pany, Limited, the defendant, at the time of the formation of that partnership, on October 31, 1882.

On December 27, 1886, suit was brought by James Bestwick, Jr., the then only surviving trustee in the deed from James Bestwick, Sr., against the present defendant to recover the royalty then claimed to be due under said contract. On the trial of that case in May, 1887, it was admitted by both parties that no coal had then been mined from the land described in said agreement, and the royalty then sought to be recovered was the advance royalty claimed to be due for not mining 4,000 tons per annum up to that time. Judgment was entered in that case for all the advance royalty found by the court to be due up to January 1, 1886.

Since the trial of that case, it has been discovered that the defendant company had in fact before or during the year 1885, run an entry for the purpose of mining coal for the distance of 214 and three tenths feet, across one corner of the land described in said agreement between the trustees of James Bestwick, Sr., and Ormsby and Spearman, and during 1885 and 1886 had mined and removed coal underlying said land and adjacent to said entry to the amount of 6,540 tons. The said entry was run or opened across the southeast corner of the land, and all the coal under said land and between the entry and the extreme southeast corner had been mined out, and also the coal lying next west of the entry for the average distance of 135 feet, where the miners came to a sand bar, which rendered the coal unmineable for any further distance in that direction. The coal so mined out was of the average thickness of four feet, and the area so mined was about 5,690 square yards. All the coal was taken out over this entire area, leaving nothing to support the overlying ground except that two ribs, one on each side of said entry, were left to support the superincumbent rock and keep it from falling down and filling the entry. Over the rest of the area so mined out, the surface had fallen in and filled the space whence the coal was taken.

When this entry was run and this coal mined, the defendant company believed they were operating on land which James Bestwick, Jr., owned individually, and in which he had granted them the right to mine. After the entry passes through the southeast corner of the land in question, it does pass into the

land of James Bestwick, Jr., which adjoins the land in question on the south, and under this land of James Bestwick, Jr., the defendant company have been and still are mining coal and taking it out through the said entry. The royalty for the 6,540 tons of coal which was mined on this land held by said trustees was paid to James Bestwick, Jr., who at the time it was so paid was trustee under the said deed from James Bestwick, Sr., and as such trustee was authorized to receive said royalty for the uses mentioned in said deed. But at the time it was so paid to him it was not known that the defendant company had mined or was mining any of the coal for which he was trustee, and the royalty was paid to him, and accepted by him, the parties at the time believing that it was due to him for coal mined from his individual land.

On November 19, 1887, the Ormsby Coal Company, Limited, and Frank D. Bright, as trustee for that company, delivered to James Bestwick, Jr., as surviving trustee under the said deed from James Bestwick, Sr., a deed which purported on its face to remise, release, quit claim and surrender up to said James Bestwick, Jr., trustee, all the coal lying and being in and under the land described in the agreement made on May 17, 1880, between the trustees of Jas. Bestwick, Sr., and Ormsby and Spearman, and all right, title, interest, claim and demand whatsoever of said first parties to said land.

Up to the time when this deed was delivered, the defendant company had been mining coal from the adjoining lands which James Bestwick, Jr., owned in his own right, and had been taking this coal out over a properly constructed track through the entry mentioned across the corner of the land in question. After the deed was delivered, that track and entry remained as it was before, but for about two months next after November 19, 1887, no mining was done in said mines and no coal was taken out through said entry. In January, 1888, mining operations were again resumed in lands of James Bestwick, Jr., and said entry was again used, and is still being used, as it had been before, for a way to get the coal out of these lands.

It was admitted and agreed at the trial that had coal been mined from this land during the year 1887 there would have been obtained four tons of lump coal for one ton of nut coal, and had 4,000 tons been mined during said year, 3,200 tons

thereof would have been lump coal and 800 tons thereof nut coal.

These, I think, are all the facts which are material to a determination of the questions raised in this case, unless it be the fact that on February 13, 1888, the Court of Common Pleas of this county discharged James Bestwick, Jr., from further duty as trustee in this matter, at his own request, and appointed Thomas Bestwick, the present plaintiff, trustee in his stead, his account having been filed and confirmed.

From these facts I conclude that the plaintiff is entitled to a judgment against the defendant for the sum of $480, with interest thereon from January 1, 1888. This is allowing to the plaintiff just the amount he would have been entitled to receive had the defendants kept the covenants in the contract in suit, and mined from the premises 4,000 tons of coal, of which 3,200 tons would have been lump coal and 800 tons nut coal, and had sold the nut coal at the mines or had not sold it at all.

I cannot agree with the proposition of the learned counsel for plaintiff, that it is competent to show that the defendant had been mining from adjacent lands and had been selling the coal so mined without making any nut coal, and that we should infer from this fact that had 4,000 tons been mined from this land, it would all have been taken and sold as lump coal, and that, therefore, the defendant should pay royalty on that amount of lump coal. What would have been done had the coal been actually mined we do not know; we can only guess. But a guess is not sufficient evidence on which to found a judgment of the court.

The other contention on behalf of plaintiff is, that the defendant is bound by the covenant to pay for 3,200 tons of lump coal at fifteen cents per ton and for 800 tons of nut coal at ten cents per ton. This claim, like the other, assumes as a fact what is not proved. It assumes that the nut coal would have been "shipped" if it had been mined. The defendant has the same right to assume that it would not have been shipped, that it would have been sold at the mines, and in that case the defendant was not bound by the covenants to pay for it. The burden of proof is on the plaintiff. He must show a breach of the covenant to entitle him to recover. The covenant is that

Decision of Court below.

defendant shall pay for 4,000 tons as though mined, not that it shall pay for 4,000 tons as though mined and the nut coal shipped. This same question was carefully considered in the former trial on these same covenants, and I am not convinced that the court erred in its conclusion in that case.

In coming to the conclusion which I have reached, I rejected both of the positions taken on behalf of the defendant.

The payment to James Bestwick, Jr., of the royalty for the coal that was actually mined from this land was not a payment on the contract in suit. It was neither so intended nor so received. It was paid and received as money due him for his own coal. He did not account for it as trustee, because he did not know the trust estate had anything to do with it, and he has been discharged. The defendant was bound to keep account of the coal mined from this land, and did not do it. A mistake it may be, but the parties interested in this fund should not lose their money because the defendant company made a mistake.

The other position taken by the learned counsel for defendant is, that the contract was surrendered on November 19, 1887, and that no rent or royalty would accrue after that date. What the defendant did do was this : It delivered the deed of release mentioned. That was all it did by way of terminating its obligations under the contract. It had the right to " abandon this contract and yield up said coal mine and privileges." It abandoned nothing, yielded up nothing. It still holds possession of and uses the entry as it did before. One of the privileges which the contract gave was " the right of way through, over or under said land to transport coal from adjacent lands." It is not necessary to discuss whether the trustees had power to grant that privilege. They undertook to grant it and the defendant exercised the privilege under that grant. That, then, is one of the privileges that must be abandoned and yielded up to avoid further liability for royalty.

It is not a sufficient answer to this to say that all the coal had been taken out of this part of the land except the ribs at the sides of the entry, which ribs the trustees had no right to take out, because they were necessary to support the surface; and that, therefore, the trustees had no further interest in or right of possession of this particular place. The language of

the deed from James Bestwick, Sr., to the trustees is, that they are "to own, control and cause to be mined all the mineral coal in and under said entire farm, except under the present buildings thereon." The grant by the trustees which defendant holds is, "All the stone coal lying and being in, under and upon" this land. When James Bestwick, Sr., made that deed to the trustees, he owned the entire estate in the land and had the right to direct that all the coal should be mined, without regard to support for the surface; and that defendant believed it had the right to take out all the coal and let the surface sink, is evidenced by the fact that it did take it all out and let the surface sink where it mined on this land. But that is a question between the trustees and the owner of the surface, whoever he may be. He is not a party to this suit, and hence the question cannot be determined here. So far as defendant is concerned the plaintiff had the right to mine out these ribs, and hence had an interest in having the actual possession of this entry surrendered if the mine were abandoned. It was not so surrendered; and the deed, if it gave anything, gave only a right of action to force the defendant out of possession. That was not an abandonment or yielding up of the privilege the defendant had under the contract. Hence the defendant can reap no benefit from the delivery of that deed without more.

And now, July 3, 1888, the prothonotary is directed to file this decision and forthwith give notice thereof to the parties or their attorneys, and if no exceptions be filed thereto within thirty days after service of such notice, he shall enter judgment in favor of the plaintiff and against the defendant for the sum of $496.88, and costs of suit.

To the foregoing decision the defendant filed exceptions, specifying that the court erred:

1–3. In holding that under the terms and language of said trust deed from James Bestwick, Sr., to John Bestwick et al., trustees, said grantor intended to and did vest the right in said trustees to take out all the coal in the land, " except under the present buildings thereon," without regard to support for the surface.

4. In refusing, on their attention being called to the fact by

the defendant, to note, as shown by the record of the trust deed, in Deed Book O, vol. 3, page 499, the said deed having been offered in evidence by the plaintiff, that partition by metes and bounds of the land described in said deed among the cestuis que trust, according to its terms, had actually been effected, and that the land through which the underground entry, used by the defendant, passes, is the twenty acre lot awarded to and now owned in severalty by James Bestwick, Jr.

5. In refusing to receive in evidence the record at No. 46 September Term 1887, Quarter Sessions of Mercer county, in the matter of the petition of the Ormsby Coal Company, Limited, for private road to coal mines under surface of lands of James Bestwick, Jr., in connection with the offer to prove by Mr. S. B. Stephenson, the artist appointed by the court to lay out said road, that on the day the viewers met to perform the duties of their appointment, he called on James Bestwick, Jr., to notify him of the fact, and to ascertain if he, Bestwick, had any objection to said road, and that said Bestwick told him he had no objections to the coal company having a roadway through his land.[1]

6. In refusing to receive in evidence the contract of April 17, 1888, between James Bestwick, Jr., et al., of the first part, and the defendant company of the second part, wherein a right of way for an underground road is granted to said coal company through the lands of said Bestwick, including the purpart awarded to him in fee in pursuance of the trust deed of James Bestwick, Sr.[2]

7. The evidence being undisputed that all mineable coal between a certain sand bar and the southeast corner of the purpart of the land awarded to James Bestwick, Jr., in pursuance of the trust deed, has been mined out, except the two ribs heretofore referred to; and it being further true that the defendant company did, on November 19, 1887, deliver a deed surrendering its coal contract and all its rights under the same, to James Bestwick, Jr., the trustee with whom the contract had been made by Spearman and Ormsby, and who was still the acting trustee at the time of the surrender, the court erred in not allowing said defendant company to show that its occupancy or use of the underground roadway through said land to transport its coal from adjoining lands to its shaft, was by

permission of the said James Bestwick, Jr., the owner in fee of said land, and under a grant from him as such owner giving it the right so to do.[3]

9. In not deciding, under all the facts in the case, that the plaintiff cannot recover for rent or royalty from the defendant later than the date of the delivery of its deed surrendering its coal contract, to wit, November 19, 1887.[4]

The foregoing exceptions having been argued, the court, McMICHAEL, J., on October 19, 1888, filed the following opinion :

The learned counsel for the defendant favored the court with a written copy of his argument on the exceptions. It has been carefully considered. The one position now attempted to be established is, that the delivery of the deed on November 19, 1887, without any actual abandonment of the premises or surrender of the possession, without any actual " yielding up said coal mine and privileges," operated as a complete determination of the contract relations between the parties.

It is conceded that the learned counsel establishes well the legal position for which he contends. He states his conclusion thus : " The principle decided is, that if a man conveys the surface, reserving the coal, he does not reserve the right to ruin the estate granted unless that was the express contract." The difficulty is not about that principle. It is correct. The difficulty is about the application of it to the case in hand. [It is true that the trustee, the plaintiff in this case, would not be permitted to mine out and remove the two ribs of coal at the sides of the entry, or any part of them, if the owner of the surface (James Bestwick, Jr., as it is alleged), should come into court and show that removing said ribs, or a part of them, would ruin, or even materially injure his estate. But even then the trustee would have the right to mine out all the coal which he could safely take without injury to the superincumbent estate. He has a right to all the coal except what is necessary to preserve the surface from injury. To stop him, James Bestwick, Jr., would have to show that its removal would injure him.] [5] To raise and determine this question, it would be necessary to have James Bestwick in court. It cannot be decided in a collateral issue to which he is not a party.

Yet the argument for the defendant proceeds on the assumption that this question can be determined in this case. It seems to be assumed that the defendant can assert all the rights which James Bestwick could assert against the trustee If the defendant has any of these rights, it must have acquired them by virtue of the contract of April 17, 1888, which was offered in evidence and rejected. But the defendant, holding under the trustee, could not acquire any rights against the trustee, and attorn to another landlord, without first fully surrendering the possession which it had obtained from the trustee. It cannot take possession under the trustee, and then hold that possession against the trustee by means of any right acquired from James Bestwick.

If that were not so; if the defendant could be permitted to assert all the rights which James Bestwick might assert as owner of the surface, still the position contended for cannot be maintained because there is no proof of the facts on which · it is based. They are assumed.

The first exception assumes that the ribs as they are now there are " necessary to support the surface." [The second exception assumes the same thing and further assumes " that whatever coal lay beyond the sand bar would have to be taken out from the further side " of the land. There is no evidence in this case that it would injure the surface, if a part or all of these ribs of coal now there were mined out. No such evidence was offered. It does not follow, without proof, that mining out a part of the ribs would in any way affect the surface; nor does it follow, without proof, that any injury would result from taking them all out and allowing the surface to sink. There was no proof offered to the effect that the " coal beyond the sand bar would have to be " or could be " taken out from the further side " of the land. Surely the trustee would have the right to take it out at this present opening, if he sees fit to do so. It may be impracticable. It may be that, though difficult, this is the only practicable way to reach that other coal. Of that we know nothing. But we do know that the trustee has the right to have it mined out, and has a right to the possession of the present opening to facilitate that mining so far as it will do so.] [6] He alone has the right to decide how he will undertake to reach this other coal. Neither

Opinion of Court below.

the defendant, the owner of the surface, nor this court, can undertake to decide that question for him, and the court will not (if it could) undertake to decide it without evidence.

Then, when the learned counsel argues that "it is folly to talk about the necessity of the defendant company to abandon the premises, in order to terminate the contract, after the delivery of the deed of surrender, because there was nothing to abandon," he assumes the very premise on which he predicates the folly, viz.: That "there was nothing to abandon." That cannot be assumed. It must be proved, and the proof is lacking.

There is another thought which may be properly mentioned in this connection. [The claim is that the defendant's liability ceased on November 19, 1887, when the quit claim deed was delivered without any abandonment of the premises or yielding up of the coal mine and privileges. That deed was delivered to James Bestwick, who was then both trustee and owner, as is said, of the surface. Surely he then had the right to mine and remove the remainder of the coal under this land; I mean the ribs, if he wished, whether the surface would be thereby injured or not. He was one of the persons entitled to the royalty or profits realized from this coal. Nobody could complain if he mined it and took his share of the profits. Can it be claimed that he, as trustee, was not entitled to the possession? Yet he did not get it. Then there was at that time no abandonment of the original contract made between the trustees and Ormsby and Spearman; no yielding up of the coal mine and privileges secured by that contract. If it was not surrendered then, when was it surrendered? Assuming defendant's position to be correct, it would not have been surrendered, or rather the excuse for not surrendering could not have existed, until the defendant had obtained from James Bestwick the contract offered in evidence, dated April 17, 1888.] [7] That was after James Bestwick had ceased to be trustee, and after all the royalty sued for in this case had accrued.

The third exception is based on a misapprehension of what the court decided. The court did not "hold," as is stated in this exception, but said, "that is a question between the trustee and the owner of the surface. He is not a party to this suit, and hence the question cannot be determined here."

The matters complained of in the fourth exception are, I

think, not material, but I have assumed in this review of the case that James Bestwick, Jr., owned in severalty the surface under which this entry passes.

The record of the proceedings by the defendant to obtain a private road to its coal bank through land of James Bestwick, Jr., was not receivable for any purpose, because it was not concluded. There was no final disposition of the case in any way. The other exceptions have been already sufficiently considered.

After arguments heard on the exceptions to the decision of the court in this case, the exceptions are dismissed and it is ordered that judgment be entered according to the decision previously filed.

Judgment having been entered in favor of the plaintiff for $496.88, the defendant took this appeal, specifying that the court erred:

1–4. In not sustaining defendant's exceptions.[1 to 4]

5–7. In the portions of the opinion in [ ] [5 to 7]

*Mr. B. Magoffin*, for the appellant.

Counsel cited: Jones v. Wagner, 66 Pa. 429; Horner v. Watson, 79 Pa. 242; Coleman v. Chadwick, 80 Pa. 81.

*Mr. S. B. Griffith* (with him *Mr. S. Griffith*), for the appellee.

OPINION, MR. JUSTICE STERRETT:

By agreement of counsel, this cause was tried by the court below without the intervention of a jury. All the facts necessary to a proper understanding of the questions that arose appear in the record that was made up by the learned judge who presided at the trial. The cause was well tried. The questions now presented by the specifications of error appear to have been fully considered and correctly disposed of. We find nothing in the record that calls for a reversal of the judgment. For the reasons given in the decision of the learned judge, and in his opinion overruling exceptions thereto, the judgment should be affirmed.

Judgment affirmed.