SAYLOR PARK LAND COMPANY, Appellee, v. GLENWOOD COAL COMPANY, Appellant.

MINES AND MINERALS: Leases—Alleged Conflicting Provisions 1 —Effect. An action to recover minimum royalties under a mining lease expressly promising to pay the same is not defeated by a subsequent provision in the lease that "a failure to comply with the said conditions shall not render (defendant) liable to any damages other than the forfeiture of this contract."

MINES AND MINERALS: Leases, Etc.—Royalties—Action to Recover—Presence of Coal. A lessor, seeking to recover minimum royalties under a mining lease wherein lessee expressly promises to so pay, regardless of the amount of coal mined, is under no obligation to show the presence of coal beneath said land sufficient to justify such royalties, when lessee failed to avail

himself of the right to surrender the lease, because of the absence of coal, but retained all his rights thereunder for the purpose of sale to another.

*Appeal from Polk District Court.*—W. S. AYERS, Judge.

THURSDAY, APRIL 5, 1917.

ACTION upon a mining lease to recover the stipulated payments provided therein. There was a trial to the court without a jury, and a judgment for the plaintiff, and the defendant appeals.—*Affirmed.*

*Clark, Byers & Hutchinson,* for appellant.

*Parker & Riley,* for appellee.

EVANS, J.—The contract involved herein was entered into between the parties thereto in December, 1910. By such contract, one Vanderwildt (plaintiff's assignor), as first party, granted to the defendant, as second party, the right to mine coal under his land. Subsequently, Vanderwildt conveyed his land to the plaintiff, and assigned also the mining lease to it. By the terms of the mining lease, the defendant acquired the right to take all minable coal from under the plaintiff's land, and agreed to pay a royalty therefor of 10 cents per ton. It further agreed to pay an annual minimum royalty of $300 for the years 1912 and 1913. At the time this contract was entered into, the defendant was operating a mine under land in close proximity to the plaintiff's land, and was intending to drive an entry from its own mine under such land, and to mine the coal through such entry. In its efforts in that direction, it encountered trouble, and never did penetrate the plaintiff's land. It held the lease, however, and exercised its rights thereunder until after plaintiff's rights had accrued for the minimum royalty both for 1912 and 1913.

1. MINES AND MINERALS: leases: alleged conflicting provisions: effect.

The defense of the defendant is predicated upon certain provisions of the lease which are contained in the following excerpts:

"The party of the second part further contracts and agrees to prosecute the development and operation of its mine with due diligence and to use ordinary care and prudence in the operation of its mine, to the end that the coal underlying the surface of the said real estate may be removed therefrom at as early a date as may be, provided that the party of the second part shall not be required to mine any coal from under the said premises, nor to pay any royalties prior to the first day of January, 1912, and that, during the years 1912 and 1913, the party of the second part shall pay in royalties to the first parties not less than $300 for each of the said years, and that after the first day of January, 1914, the party of the second part shall pay in royalties to the parties of the first part not less than $500 annually until the minable and salable coal under the surface of the said land becomes exhausted, or too thin or the quality insufficient to warrant its being further mined in the practical operation of said mine, in which event the payment of royalty as herein provided for shall cease and determine, and the party of the second part shall be under no obligation to pay any further sum to the parties of the first part by reason of this lease, provided, however, that if the second party fail to mine sufficient quantity of coal during each of the said years to produce the said minimum amount of royalties in any year, it may pay the royalty on the quantity above stated and continue this lease, but for any amount paid for which coal has not been mined, it shall have credit on royalty for coal mined in succeeding years. * * *.

It is further understood and agreed that the failure on the part of the party of the second part to perform any of the conditions and stipulations of this lease shall operate

to terminate this lease and forfeit all the rights granted to him hereunder, provided that the parties of the first part shall first have given the party of the second part 60 days' notice in writing of their intention to declare this lease void, in which notice they shall specify what covenant or agreement it is claimed has been violated, and if, after the giving of such notice, such condition or agreement shall not, within 60 days thereafter, be complied with and performed by the party of the second part, then, at the expiration of the sixty days from the service of such notice, this lease shall be forfeited, and shall become null and void and of no further force or effect. The failure to comply with the said conditions shall not render the party of the second part liable to any damages further than the forfeiture of this contract."

The first point made for defendant is based upon the last sentence above quoted. It is argued that the present action is one for *damages,* and that the lease expressly waives damages against the defendant. The action, however, is not for damages; it is strictly an action on contract, and is based upon an express promise to pay.

2. MINES AND MINERALS: leases, etc.: royalties: action to recover: presence of coal.
It is further urged that the plaintiff is not entitled to recover such minimum royalty unless he prove that there is sufficient coal underlying his land to warrant the payment of the royalty claimed. The argument at this point also ignores the real provisions of the contract. The contract by its terms expressly provided for the payment of a minimum royalty of $300 per year for 1912 and 1913, regardless of whether sufficient coal were mined in those years to warrant that amount of royalty. If, before these payments had accrued or become due, the defendant had determined that there was no minable coal under the plaintiff's land sufficient to warrant a mining thereof, and upon such ground had surrendered its contract and had re-

fused to make any future payment because of such surrender, quite a different question would be presented. The defendant did not surrender its contract, but continued to exercise its rights thereunder until after the payments involved therein had become due. Even after it had abandoned its intention to drive its own entry under this land, it still held the lease with a view of disposing of it to another mining company which was mining coal upon the further side of plaintiff's land. We have no occasion, therefore, to construe such provisions of this contract as might be applicable in case a timely surrender had been made. The case involves no question of surrender or forfeiture, nor any question of damages for breach, nor any question of the extent of minable coal under the land, and therefore no question of burden of proof on such an issue. We must take the facts as found by the trial court. Such finding is well supported by the testimony. The trial court correctly construed the contract. We find no error. The judgment is—
*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.