A. R. ROWLAND et al., Appellees, v. ANDERSON COAL COMPANY, Appellant.

MINES AND MINERALS: Leases—Actions For Royalty—Burden of Proof.  A 20-year coal mining lease, wherein lessee, with no surface rights, agreed to pay, annually, after 3 years, the sum of $1,000 as a minimum annual royalty, does not impose on the lessor the burden of proof to show, as a condition to the recovery of such minimum royalty, that the premises contain merchantable, minable or workable coal.

*Appeal from Marion District Court.—*W. S. AYERS, Judge.

FRIDAY, APRIL 6, 1917.

SUIT to recover a minimum annual royalty claimed to be due under a written lease, giving the right to mine coal under plaintiffs' land. Plaintiffs had judgment, and defendant appeals.—*Affirmed.*

*Crozier & Welch,* for appellant.

*W. H. Lyon,* for appellees.

SALINGER, J.—I.  The defendant agreed

MINES AND MINERALS: leases: actions for royalty: burden of proof.

to pay to plaintiff "as a minimum annual royalty the sum of $1,000 per year" during the term of a lease which was entered into on January 2, 1912, and ran 20 years from that date.  The "first payment of $1,000" was to be made on January 2, 1915, 3 years from the time the lease was made. The parties are in substantial agreement that the following is the sole question to be decided: Under the coal lease made, must the lessor show that the leased premises contain merchantable or minable or workable coal before he can recover the agreed minimum royalty?  To sustain his claim that lessor has this burden, appellant urges that actual payment of the stipulated minimum royalty presupposes that there is merchantable coal, and to hold with appellee compels defendant, who is in the position of one who buys coal, to guarantee that what was sold him exists, instead of making the seller warrant that he has something to sell.  He claims, too, that various hardships may result in sustaining the theory of the trial court, which put the burden upon defendant.  On the other hand, appellee claims that stated hardships will or may follow if the theory of appellant be adopted; that, in making this lease, the defendant assumed that merchantable coal existed, and took the chances of finding himself in error; further, that no one

but defendant had the right or the practical means to ascertain whether workable coal existed, and that lessor is powerless to prove what defendant insists upon.   Appellant responds that, while it had made drillings before contracting, it is a matter of common knowledge that, though such drillings indicate the presence of minable coal, actual mining fails 'n many cases to find such coal; further, that defendant has made every reasonable attempt to ascertain whether merchantable coal exists, and that the condition of the ground through which it attempted to drive entries made it impossible to continue the entries into and under the premises leased.

It is quite apparent that, whichever way the hardship falls, or whatever the general law of the subject may be, we must limit ourselves to what this particular agreement requires.   Neither party is repudiating it, and appellant insists that it is to remain effective if he shall be compelled to pay the minimum royalty.   This fact alone will distinguish some cases hereafter to be noted.

Before the lease was executed, the defendant had prospected upon the leased land, drilled holes upon it and upon land surrounding and adjoining it; it was in possession of blue prints of this prospecting and drilling, and entered into the lease without demanding further opportunity for investigation.   It is conceded that it never did any actual mining.   On the other hand, it is undisputed that it began entries on land adjoining the leased land and drove same towards that land, and, after a short drive, slate and rock were struck, which made the further driving of that entry impossible.   Defendant argues that it has done all that can reasonably be expected, and that there is no assurance that it would not forever strike stone and the like, just as it has heretofore, and that, having no surface rights, it may not make a direct test upon the leased land itself.   In effect, this is a contention that, if reasonable effort on the

part of defendant will not ascertain whether workable coal exists, the plaintiff may not have the stipulated minimum royalty unless he prove what, according to defendant, it is impossible to prove. In other words, defendant may keep his hold upon the leased premises for 20 years because he has found difficulties in the way of entries heretofore driven by him, unless the lessor can furnish proof which defendant contends it is practically impossible for defendant to obtain. We may assume that the parties could, by agreement, be put into such relative situation. The courts will be reluctant so to construe the writing unless the words of the contract compel it. The contract provides for an annual minimum royalty, but none is to be paid for 3 years. This, at the outset, indicates that the parties intended that the failure to find coal should not defer payment of the minimum royalty for more than 3 years. There is nothing in its wording which justifies us in saying that, if appellant for 3 years failed to find merchantable coal, the payment of the minimum royalty should be deferred indefinitely. Before the lease was executed, defendant put itself in possession of such information as it could obtain by prospecting and drilling. Though it may be true that information thus obtained might prove faulty, the defendant, experienced miners that they were, knew there was this danger. Nevertheless, they proceeded to contract. Now what is it they agreed to do? They agreed "to mine all workable coal underlying said land in a good, workmanlike manner, and to pay to first parties a royalty of 7 cents per ton for all merchantable coal which passes over a regulation screen in use in this district, as agreed upon by the miners and operators of Iowa, the said royalty for each month to be paid on the 20th day of the month succeeding." In addition, the second party agrees to leave a block of coal not less than 120 feet square under and surrounding a described well, the block to be left so as to leave that well

in the center thereof, and that, if there be a mortgage or lien on the premises which interferes with the working of the coal, second party may pay the same off and deduct the amount paid from any royalty due or to become due under the contract. They also agree, as stated, to pay said minimum royalty beginning with January 2, 1915. In effect, the appellant is driven to the claim that this is an agreement to pay the minimum royalty at the time stated, provided by that time merchantable coal is found. If that be the true construction of the contract, of course the lessor must prove that such coal was found. But we are unable so to construe the contract. We think in substance it is an agreement that, in consideration of being permitted the possession of the premises for 20 years, the lessee will, after 3 years, pay the agreed minimum royalty, and take the risk of being unable to prove that merchantable coal cannot be found by the time the duty to pay the royalty accrues. If we take the opposite position, we would have to hold that defendant agreed to mine, but has complied with this agreement by attempting to mine and finding difficulties in the way, and at the pleasure of defendant, the lessor shall lose control of the mining rights on his land for 20 years, unless he does what he has neither right nor power to do, and satisfies thereby a condition precedent which the contract never made.

In this connection, it may well be added that no one other than defendant can sink air and water shafts, without which coal mining under the leased land could not well be carried on; that the contract itself gives it the privilege to sink such air and water shafts as shall be necessary for the operation of the mine; and defendant agrees to drain off by underground tiling all water pumped from the mine to the surface—and none but defendant has the right to do this draining.

As it seems to us, all of it makes clear that here was

no contract that the payment of the minimum royalty
should depend upon success in finding merchantable coal,
or rather, upon proof by the lessor that there was such coal.
We think the fair effect of the contract is, putting it at its
strongest for the appellant, that it may terminate the lease,
and with it the obligation to pay minimum royalty, by prov-
ing that there is a failure of consideration, in that actual
mining has demonstrated that merchantable coal is not to
be had.   See *Saylor Park Land Co. v. Glenwood Coal Co.,*
179 Iowa 919.

We find nothing in conflict with the conclusion we
reach in the two cases upon which appellant relies.   *Carl
v. Granger Coal Co.,* 69 Iowa 519, is an action on lease and
to recover damages for failure to perform its condition.
The contract contained a provision:

"It is further understood that the defendant agrees to
commence work as soon as practicable, and will mine coal
from the plaintiff's land by June 1, 1885, providing there
is found a workable vein of good, merchantable coal."

The most decided is that, where the contract is made
to depend upon the finding of merchantable coal, one who
seeks damages for breach of the lease must make proof that
such coal was found, and that, for the mere failure to pros-
pect for coal where its existence is unknown, nothing more
than nominal damages may be recovered.

*Ellis v. Cricket Coal Co.,* 166 Iowa 656, was an action
on contract for minimum royalty on coal not mined, and
defendant had judgment.   The contract was that defendant
was to commence mining or paying royalty "on said coal"
on the 1st day of April, 1906, and to prosecute the same
with reasonable dispatch, and to "continue the mining of
such coal until all the merchantable and minable coal is
taken from said land."   It was further provided that all
money paid as royalty in excess of the sum produced from
actual mining should be considered as advanced royalty,
"and shall apply on the next or succeeding month's royal-

ties during the life of this contract." The defendant did mine coal until about October 1, 1911, and plaintiff sought to recover minimum royalty from that time until February 1, 1913. He alleged that the land was underlaid with merchantable coal which could be mined. Defendant denied that any such coal remained, and averred that it had mined until it was done at a financial loss. We held that the burden was on plaintiff to show that there remained under the surface of the land merchantable and minable coal. Very properly so in these circumstances. Under the terms of the contract, as claimed by the pleading by plaintiff, the defendant owed no royalty, minimum or other, unless the land leased was underlaid with merchantable coal. Certainly, one who seeks royalty under such contract must prove that such coal remained. This, too, cannot control the instant case.

We are of opinion that the trial court is right, and its judgment is, accordingly,—*Affirmed.*

Gaynor, C. J., Ladd, Evans and Preston, JJ., concur.