E. P. FISHER, Appellee, v. MAPLE BLOCK COAL COMPANY, Appellant.

MINES AND MINERALS: Leases—Payment of Minimum Royalties. A lessee, who is obligated for a stated period to pay a

minimum yearly royalty for mining coal, with right to ter-
minate the lease when all minable coal under the premises is
exhausted, may not escape payment of such royalty unless he es-
tablishes (a) that no minable coal exists, and (b) that he has
duly terminated the lease.

*Appeal from Polk District Court.*—CHAS. A. DUDLEY, Judge.

JUNE 27, 1918.

REHEARING DENIED SEPTEMBER 30, 1918.

ACTION by the lessor in a mining lease to recover a stip-
ulated minimum royalty for the mining of coal. The de-
fense, in general terms, was that plaintiff's right to a min-
imum royalty had terminated and ceased, under the terms of
the contract, because all minable coal had been removed,
and the royalty thereon paid prior to the term for which the
plaintiff sues. There was a judgment for the plaintiff, and
the defendant appeals.—*Affirmed.*

*John L. Gillespie,* for appellant.

*Stipp, Perry, Bannister & Starzinger,* for appellee.

EVANS, J.—The plaintiff is the owner of a farm in Polk
County. In October, 1903, she executed to the defendant's
assignors a mining lease, whereby she granted the right to
the lessee to mine all the coal underlying said lands. By
its terms the lease was to run for 20 years from date, "un-
less all the coal shall be sooner removed." She was to
receive a royalty of 10 cents per ton, payable monthly, for
all coal mined during the preceding month. It was further
provided therein that the lessee should "pay a minimum
royalty of $1,000 for each year during the continuance of the
lease, payable semi-annually on the first day of March and
first of September each year, excepting for the last year." It
was also provided that this minimum of $1,000 should be
paid whether sufficient coal was mined to produce the sum

or not, and that such minimum royalty should accrue beginning "not later than March 1, 1904." The lease also provided for certain surface rights to the lessee, including a right of way and the right to dig air shafts and water shafts, and to pump water to the surface and to carry the same over the surface to some natural drainage thereon. The defendant entered into possession under its lease, and conducted mining operations thereunder for several years. It also paid all royalties up to March 1, 1914. This suit was brought to recover the minimum royalty accruing from March 1, 1914, to March 1, 1916. The defendant proved, or offered to prove, that, in the year 1914, its mine became unworkable because of flooding; and that, because of such flooding, it was unable to operate the same with any profit; and that it had made a good-faith effort to overcome the difficulties presented; and that it had expended large sums of money therefor, greatly to its own loss. Several pertinent questions are presented for our consideration. We find, however, that our conclusions as to one of them become decisive of the case, and we shall have no occasion to go further.

For the purpose of our consideration, we shall assume without deciding, that the expression "all coal," as it appears in the lease, is the equivalent of "all minable coal." We shall assume, also, that, by the express terms of the lease, either party could terminate the same when all the minable coal had been taken from these lands. It was the undoubted intent of the lease that the coal should be removed by the lessee with diligence, and within the shortest practicable time. The plaintiff would thereby receive royalties on all the minable coal included in the lease. Manifestly, in the process of the removal, there would come a time when it would be a question of more or less uncertainty as to whether all the minable coal was removed, and, perhaps, whether there were other beds of coal underlying

other portions of the farm, and whether the value of such other beds would justify the expense of sinking additional shafts thereto. Manifestly, also, in such a case, the lessor could not terminate the lease as long as the lessee exercised or claimed the right to exercise its privileges under the lease. In this case, it appears without controversy that, though the mine which was worked had been badly flooded with water, there was a bed of coal underlying other portions of the farm, to which no shaft had been sunk nor entry driven. As already indicated, the lease provided for certain surface rights. The lessee had a right thereunder to sink shafts upon other portions of the farm. It offered no evidence that it had surrendered its lease or relinquished its rights thereunder. On the contrary, it appears affirmatively that it actually exercised its privileges under the lease for the greater part of the term for which the minimum is claimed. As long as the lessee held any right under such lease, it operated as a continuing encumbrance upon the property of the lessor. It also saved to the lessee the speculative chances of the future, and deprived the lessor thereof accordingly. It would seem, therefore, elementary justice that, as long as the lessee claimed any of the benefits of the lease, it should be subject to its burden. On its face, the lease was valid and binding upon both parties until one or the other should elect to terminate it according to its terms. If the lessee desired absolution from further payment of the minimum royalty, it fairly devolved upon it to take an irrevocable position to that end, and to so notify the lessor. An acceptance by the lessor would indisputably terminate the lease. A refusal by the lessor would make an issue which could be litigated, if necessary.

In *Saylor Park Land Co. v. Glenwood Coal Co.*, 179 Iowa 919, we held, in effect, that, until the lessee in some manner surrendered its lease and its claim of right thereunder, it continued to be bound by its obligation. Some-

what along the same line is *Rowland v. Anderson Coal Co.*, 179 Iowa 987. This is the holding, also, in other jurisdictions. *Plummer v. Hillside Coal & Iron Co.*, 160 Pa. 483 (28 Atl. 853) ; *Jamestown & F. R. Co. v. Egbert*, 152 Pa. 53 (25 Atl. 151) ; *Aderhold v. Oil Well Supply Co.*, 158 Pa. 401 (28 Atl. 22) ; *Double v. Union Heat & Light Co.*, 172 Pa. 388 (33 Atl. 694) ; 2 Snyder on Mines, Sections 1218–1224, 1239; *Bestwick v. Ormsby Coal Co.*, 129 Pa. 592 (18 Atl. 538) ; *Palmer Brick Co. v. Woodward*, 138 Ga. 289 (75 S. E. 480) ; *New York Coal Co. v. New Pittsburgh Coal Co.*, 86 Ohio 140 (99 N. E. 198).

We reach the conclusion that it was incumbent upon the defendant, not only to show that it had a right to terminate the term of the lease, but also that it did terminate the same by some form of surrender and by some manner of notice to the lessor.

On this ground, the judgment below is—*Affirmed.*

PRESTON, C. J., LADD and SALINGER, JJ., concur.