D. J. Van Liew, Trustee, Appellee, v. Norwood-White Coal
Company, Appellant.

**MINES AND MINERALS:** Leases—Payment of Minimum Royalty.
A lessee of mineral lands who obligates himself to pay the lessor a
minimum yearly royalty for a stated period of time, "*or until such
time prior thereto as the minable coal under said premises shall have
become exhausted,*" continues liable for said minimum yearly royalty
so long, during said stated period, as he fails to surrender or ter-
minate the lease on the ground that the coal is exhausted.

Salinger, J., dissents as to the construction of the contract.

*Appeal from Polk District Court.*—George A. Wilson, Judge.

November 29, 1920.

Action to recover a minimum royalty stipulated for in a
mining lease. The answer contains a general denial and an
affirmative defense. The affirmative defense was that the min-
able coal under plaintiff's land had become wholly exhausted,
whereby the defendant became absolved from the payment of a
minimum royalty in excess of the royalty per ton actually mined.
The trial court directed a verdict for the plaintiff, and the de-
fendant appeals.—*Affirmed.*

*Stipp, Perry, Bannister & Starzinger,* for appellant.

*J. L. Gillespie,* for appellee.

Evans, J.—In January, 1914, the plaintiff and defendant
entered into a contract of mining lease upon 120 acres of land
owned by the plaintiff, whereby the defendant was permitted to
remove the minable coal from under the plaintiff's land, at a
royalty of 10 cents per ton, and at a minimum royalty of $500
per year after January 1, 1915. The defendant entered upon
the premises and continued to mine coal therefrom until some
time in the year 1916. It exercised no mining rights after the

year 1916, in which year, as claimed by it, the minable coal became exhausted. The petition makes no claim for any royalty after the year 1916. It does claim the minimum royalty for the years 1915 and 1916. Some time after 1916, the defendant served a notice upon the plaintiff, surrendering the lease on the ground that the minable coal had become exhausted in the year 1916. On the trial, the defendant introduced evidence tending to show that the minable coal had become exhausted at the time defendant ceased to work the mine. At the close of the evidence, the trial court sustained the motion of the plaintiff for a directed verdict for the amount claimed, on the ground that the undertaking for the payment of minimum royalty was absolute, during the continuance of the lease.

In support of the ruling, appellee relies on *Fisher v. Maple Block Coal Co.*, 184 Iowa 397. On the other hand, the appellant differentiates the case at bar from the *Fisher* case on the ground that, in the case at bar, the promise to pay a minimum royalty was conditional upon a continuing supply of minable coal. The question thus presented is one of the construction of the contract. In such contract, the *term* of the lease was stated as follows:

"The party of the first part, for and in consideration of the conditions named below, and the payment to him of the sums of money hereinafter agreed to be paid, hereby grants to the second party for the period of 20 years, or until such time prior thereto as the minable coal under said premises shall have become exhausted, the exclusive right to mine and remove through shaft or shafts located on other land, all the coal underlying," etc.

The provision therein for *minimum royalty* was as follows:

"8th. Minimum Royalty. If in any year from and after January 1, 1915, the minable coal under said premises not being exhausted, the royalty from coal therefrom mined, as herein agreed, does not equal the sum of five hundred ($500) dollars, then the party of the second part shall pay to the party of the first part at the end of each year subsequent to January 1, 1915, a sum sufficient, which, added to the amount of royalties already paid in that year, will equal the sum of five hundred ($500) dollars."

The argument for appellant is that, the minable coal having

become exhausted, the condition upon which it undertook to pay a minimum royalty failed.

We think the case does not differ in principle from the case of *Fisher v. Maple Block Coal Co.*, 184 Iowa 397. The emphasis of appellant's argument is placed upon the condition contained in the second paragraph quoted above from the lease. This is the same condition as is contained in the first paragraph above quoted from the lease. The condition as first expressed permeated the entire lease. It could do no more than that if repeated in other paragraphs. The maximum term of the lease was 20 years. It was subject to termination "prior thereto," if the minable coal should "become exhausted." The termination of the lease, either by lapse of 20 years, or on the ground that the minable coal had become exhausted, would terminate the obligation to pay royalty. If the term continued for 20 years, the date of its termination would be fixed and certain. The lease would terminate automatically, so to speak.

If, however, the lease should be terminated on the ground that the minable coal had become exhausted, it could not ordinarily terminate automatically on a fixed and certain date. The process of exhaustion is gradual. · The exhaustion of minable coal which justifies the termination of the lease is comparative, and not absolute. It is not necessary that the lessee should remove *all* the merchantable coal. It is sufficient that the supply of coal shall have been exhausted to such a degree that it is no longer profitable to mine the same. When that point is reached is necessarily a question of estimate and of judgment and approximation. From the very nature of the case, the lessor cannot assert such ground of termination of the lease, if the lessee chooses to continue to exercise his rights thereunder, either in mining the coal or in conducting boring experiments upon the premises, in search of additional beds. It necessarily follows that, if the lease is to be terminated prior to the expiration of 20 years, on the ground of the exhaustion of minable coal, the initiative rests upon the lessee, and involves a surrender by him in some manner of the benefits of the lease and of his right of dominion thereunder. When the lessee does elect to terminate the lease on such ground, it becomes binding on the lessor, in the

absence of proof by him that the minable coal is not exhausted. *Ellis v. Cricket Coal Co.,* 166 Iowa 656. This feature of the case was quite fully considered in the *Fisher* case, supra. Therein we said:

"Manifestly, in the process of the removal, there would come a time when it would be a question of more or less uncertainty as to whether all the minable coal was removed, and, perhaps, whether there were other beds of coal underlying other portions of the farm, and whether the value of such other beds would justify the expense of sinking additional shafts thereto. Manifestly, also, in such a case, the lessor could not terminate the lease as long as the lessee exercised or claimed the right to exercise its privileges under the lease. * * * As long as the lessee held any right under such lease, it operated as a continuing incumbrance upon the property of the lessor. It also saved to the lessee the speculative chances of the future, and deprived the lessor thereof accordingly. It would seem, therefore, elementary justice that, as long as the lessee claimed any of the benefits of the lease, it should be subject to its burden. On its face, the lease was valid and binding upon both parties, until one or the other should elect to terminate it according to its terms. If the lessee desired absolution from further payment of the minimum royalty, it fairly devolved upon it to take an irrevocable position to that end, and to so notify the lessor. An acceptance by the lessor would indisputably terminate the lease. A refusal by the lessor would make an issue which could be litigated, if necessary."

The same holding was foreshadowed in *Saylor Park Land Co. v. Glenwood Coal Co.,* 179 Iowa 919; *Rowland v. Anderson Coal Co.,* 179 Iowa 987.

We reach the conclusion that the case at bar is ruled by the cited cases. The trial court, therefore, properly directed the verdict.—*Affirmed.*

WEAVER, C. J., PRESTON and STEVENS, JJ., concur.

SALINGER, J. (dissenting). The rights of the parties depend upon their contract. On the one construed in *Fisher v. Maple Block Coal Co.,* 184 Iowa 397, the decision in that case was right.

But in my opinion, the contract at bar so differs from the one in *Fisher's* case as that said decision does not control this case. I think that, because of the provisions of the agreement we have now, there should be a reversal.