GEORGE H. ZIMBELMAN et al., Appellees, v. BOONE COAL, Incorporated, Appellant.

No. 42729.

NOVEMBER 19, 1935.

REHEARING DENIED MARCH 20, 1936.

Mahoney & Mackey, for appellant.

Dyer, Jordan & Dyer, for appellees.

DONEGAN, J.—On or about the 3d day of September, 1910, George H. Zimbelman and others, who were the owners of certain lands in Boone county, Iowa, entered into a written lease granting to the Zimbelman Coal Company of Boone County, Iowa, the right to remove coal from such lands for the period of twenty years. Under the terms of the lease the coal company had the possession and use of the shaft through which the coal was to be removed and of five acres of the surface land adjacent thereto, and agreed to pay a royalty of 10 cents on each ton of coal removed. It further provided that, if the royalties on the coal mined during any year commencing September 1, 1910, should not amount to $600, the coal company would pay the difference. Attached to one of the pages of said written lease was a typewritten sheet in reference to the payment of additional rent for surface land under certain conditions, the contents of which will be hereinafter set out. This inserted sheet was not in page order and made up no part of either the last sentence on the preceding page or the following sentence on the next page, and there is nothing in the lease to indicate at what point thereof it should be inserted. There is evidence, however, tending to show that it was attached to the lease before its execution.

This lease was held under successive assignments and the coal mine operated in successive order by Heaps Coal Company, Boone Coal Company, Johnson Coal Company, and the Boone Coal, Incorporated, the defendant in this action. The defendant took its assignment of the lease and began its operation of the

mine some time in 1927, and was still in possession at the time this action was commenced. Some time in the spring of 1932 a fire occurred in what is known as the upper works of the mine, and thereafter no more coal was removed through the shaft upon the leased premises. Some time in the fall of 1932 an action was brought against the defendant coal company by parties other than the plaintiffs herein, in which it was asked that a receiver be appointed for the coal company. It appears that such receiver was appointed, that he took and continued in the possession of the leased premises for some time, paid all claims filed against him, and finally wound up the receivership and returned the leased property to the coal company, which continued in possession thereof. In February, 1933, the plaintiffs served notice on the defendant coal company of the forfeiture of its lease and thereafter commenced an action in justice court for the possession of the property. From a judgment in favor of the plaintiffs in this case, the defendant appealed to the district court of Boone county, Iowa. No trial was had on this appeal and no writ of possession was ever issued. In April, 1933, the plaintiffs commenced the instant action, and in their petition, as amended, they claimed that the royalties on coal mined for the years 1930 to 1933, inclusive, were less than $600 and that, under the provisions of the lease, there was due to plaintiffs as royalties for the year ending September 1, 1930, the sum of $365.55; for the year ending September 1, 1931, the sum of $260.51; for the year ending September 1, 1932, the sum of $268.48; for the year ending September 1, 1933, the sum of $600; making a total of $1,494.54 due as rental or minimum royalties. Said petition, as amended, also alleged that there was due plaintiffs under said lease the further sum of $300 as rental for the surface land occupied by mining operations, in accordance with the terms of said inserted page or sheet attached to the lease, making a total of $1,794.54, for which judgment was asked.

The defendant's answer admitted the execution of the lease, its assignment, and the operation and possession of the leased premises by successive assignees, including the defendant. It also admitted that for the year September 1, 1930, to September 1, 1931, the amount paid was less than $600 per year minimum. It denied that the amount paid for the year ending September 1, 1929, was less than the claimed minimum of $600, denied that

the provision as to surface land was of any validity, and denied that it should be required to pay rent after the expiration of the lease on September 3, 1930. The answer further alleged that, subsequent to the expiration of the lease, the defendant had paid the royalty of 10 cents per ton for all coal mined; that the plaintiffs had made no claim for the difference between the royalties on the coal mined and the minimum rental of $600 per year; that, by accepting the royalties on the coal mined and failing to make any claim for the difference between such royalties and the minimum of $600, and by failing to file their claims with the receiver of the defendant company, the plaintiffs had waived their right to claim such minimum royalties; that the defendant, with the knowledge of the plaintiffs, had spent large sums of money in repairing the portion of the upper works damaged by the fire and in keeping the water pumped out of the coal mine; and that, because of the conduct of the plaintiffs in failing to make any claim for said minimum royalties and in allowing the defendant to make such expenditures, plaintiffs were estopped from claiming such royalties and rental for the surface ground. The case was tried to the court and judgment rendered for the plaintiffs in the full amount asked in the petition From this judgment the defendant appeals.

█ Several matters are urged as grounds of reversal. The first alleged error goes to the admission by the court of evidence in regard to the inserted paragraph in the lease. This inserted paragraph is as follows:

"In case the workings extend to and over the lands other than that owned by the party of the first part, then, and in that event only, the second party shall pay a rental for such surface land so occupied and used for mining operations the sum of Twenty five ($25) Dollars per acre, the same to be estimated on a *pro rata* basis of the whole quantity of coal mined and raised in such shaft."

The plaintiffs claimed and sought to show that, under this paragraph, if coal mined underneath other lands than plaintiffs' were brought out through the shaft on plaintiffs' premises, the plaintiffs would be entitled to surface rental for the five acres occupied by the defendant; that the amount of such rental was to be determined pro rata on the amount of coal coming from other lands as compared with the amount of coal coming from the

plaintiffs' lands; that, if all the coal brought through the shaft came from plaintiffs' lands, no surface rental was to be paid; that, if all of the coal brought through the shaft came from other lands than plaintiffs', a maximum rental of $25 per acre per year was to be paid; and that, if part of the coal brought through the shaft was from plaintiffs' lands and a part from other lands, the surface rental should be determined by the ratio that the amount of coal brought from other lands bore to the amount brought from plaintiffs' lands. In support of this contention of plaintiffs, they were allowed, over the objection of defendant, to introduce the evidence of the plaintiff Zimbelman as to his understanding of the meaning of this inserted clause in the lease at the time the lease was made and thereafter. One J. W. Borts, who was a bookkeeper and part owner of Heaps Coal Company, one of the former owners of the lease in question, was allowed to testify as to his understanding of the meaning of this inserted paragraph, and was also allowed to testify as to the meaning of this clause as understood by a Mr. Johnson, who was one of the officers of the defendant company. It is true, of course, as contended by appellees, that parol evidence may be admissible to explain uncertain and ambiguous terms of a written instrument. We know of no case, however, in which this rule has been construed as going to the extent of allowing the understanding of one party to a contract as evidence of the understanding which a later party, by assignment, to such contract had or should have had. Nor do we know of any precedent by which a bookkeeper and officer of a former corporate owner of a contract, where no question was raised during its ownership as to the meaning of an ambiguous or uncertain part of the contract, has ever been considered a competent witness as to the *understanding* which an officer of a subsequent corporate owner of such contract had concerning it. An examination of the inserted paragraph is sufficient to show that, standing by itself or considered in connection with the other portions of the lease, this paragraph is not only obscure but absolutely unintelligible, and that, in order to give it the meaning claimed by appellees, resort must be had to extrinsic evidence, to strained inferences to be drawn from facts and circumstances, and to the conclusions of the witnesses as to their *understanding* of what it meant. No evidence was presented as to anything that was said or done in connection with the execution of this portion of the lease, and, so far as the record

shows, there never was any occasion for the application of this inserted paragraph or for any consideration or discussion of its meaning until after the appellant had taken possession under the assignment to it. We do not think this evidence furnished a sufficient basis of fact to support the trial court's conclusion as to the meaning of the inserted paragraph in the lease, and, without such evidence, we find no competent evidence upon which the trial court could have based its finding that the appellant was indebted to the appellees in the sum of $300 for surface rental because of this provision of the lease.

As to the remaining portion of the appellees' claim against the defendant company, however, we think the evidence is such that the finding of the trial court, having the effect of the verdict of a jury, cannot be disturbed by this court upon appeal. There was ample evidence from which the trial court could have found that, after the expiration of the period of the written lease, the appellant continued to occupy the premises under the same terms, that the royalties for the years ending on September 1, 1929, 1930, 1931, and 1932 were still due and unpaid and amounted to $1,494.54. As to the appellant's contention that the appellees' claim on these items of minimum royalties was waived by their failure to file their claim with the receiver and by their failure to demand the same when such royalties became due, we think the evidence was such that the court was not obliged to reach such finding, but that it could find from the evidence that the amounts claimed by the plaintiffs were based upon the provisions of the lease and the occupancy of the premises by the appellant thereunder. As found by the trial court, the failure to file a claim with the receiver does not bar the owner of a claim from asserting it against the party liable thereon. United States Trust Co. v. Wabash R. Co., 150 U. S. 287, 14 S. Ct. 86, 37 L. Ed. 1085; Sunflower Oil Co. v. Wilson, 142 U. S. 313, 12 S. Ct. 235, 35 L. Ed. 1025; Chemical Nat. Bank v. Hartford Deposit Co., 161 U. S. 1, 16 S. Ct. 439, 40 L. Ed. 595. And it would be a strange extension of the law in regard to waiver if, because a creditor fails to demand and enforce the payment of a debt when due, he should be held to waive the payment thereof. If there was any evidence which under any construction could be held to furnish a basis for the claim of estoppel against the appellees, and we do not find that there was, it was certainly not such that the court was obliged to accept it as con-

clusive. Any expenditures made upon the leased premises by the appellant were not made as the result of any understanding or agreement with the appellees, and were not made in response to or in reliance on anything said or done by appellees. The appellant was in possession of the property and was insisting on remaining in such possession, and any expenditures made by it in connection with the property must have been made for the purpose of keeping it in condition so that the appellant could operate it in the future, and not for the benefit of the appellees.

■■■ As to the claim that the appellees should not be entitled to any minimum royalties or to any other payment as rental under the lease, because they had served notice of forfeiture of such lease, it is undisputed that the forfeiture never became effective and that the appellant remained in possession until the time of the trial. If the appellant wished to avoid the payment of rent or the payment of the minimum royalties and the expenditure of the amounts spent by it in repairing the shaft and pumping the water from the mine, it could have done so by surrendering the lease when demanded. The most that can be claimed in this case is that there was a constructive eviction of the appellant by the appellees; and "the great weight of authority is to the effect that, in order for the lessee to rely upon constructive eviction as a ground for avoiding payment of the rent contracted for, he must surrender or abandon the leased premises." 20 A. L. R. on page 1370, note. See, also, Toy v. Olinger, 173 Wis. 277, 181 N. W. 295, 20 A. L. R. 1366; Veysey v. Moriyama, 184 Cal. 802, 195 P. 662, 20 A. L. R. 1363; Bailey v. Sovereign Camp, W. O. W., 116 Tex. 160, 286 S. W. 456, 288 S. W. 115, 47 A. L. R. 876, at page 885; Saylor Park Land Co. v. Glenwood Coal Co., 179 Iowa 919, 162 N. W. 203; Fisher v. Maple Block Coal Co., 184 Iowa 397, 398, 168 N. W. 110; Van Liew v. Norwood-White Coal Co., 190 Iowa 79, 179 N. W. 960.

We find that as to the items of appellees' claim for minimum royalties due in the sum of $1,494.54, the judgment of the trial court was correct, but that, as to the item of $300 contained in said judgment for the rental of surface land, there is no evidence to support such finding, and the judgment should be modified by deducting said item from the total amount of the judgment as entered by the trial court.

As thus modified, the judgment of the trial court is affirmed, and the case is remanded for entry of final judgment in accord-

ance with the directions herein contained.—Modified and affirmed.

KINTZINGER, C. J., and ALBERT, POWERS, PARSONS, HAMILTON, and RICHARDS, JJ., concur.