# H. P. Double *v.* Union Heat and Light Company, Appellant.

### [Marked to be reported.]

*Lease—Oil and gas lease—Landlord and tenant—Termination of lease—Notice.*

If a tenant wishes to avail himself of a privilege which he possesses of terminating the lease by his own act, he must do it before he has entered upon another year of his term.

An oil and gas lease was to terminate by its own limitation two years from its date; after that the lease was to continue " as much longer as oil and gas is found in paying quantities therein . . . . and should any well produce gas in sufficient quantities to justify marketing, the lessor shall be paid at the rate of two hundred dollars per year for such well so long as the gas therefrom is sold." *Held*, that after the rental clause became operative by the finding of gas in paying quantities, the lessee could not terminate without giving notice to the lessor of his intention to do so.

The mere cessation of the use of gas from the well did not terminate the lease of its own force and relieve the lessee from any duty to the lessor.

Argued Oct. 21, 1895. Appeal, No. 113, October Term 1895, by defendant from judgment of C. P. Butler County, March T., 1895, No. 130, on verdict for plaintiff. Before STER-

RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Assumpsit for rent on an oil and gas lease.    Before GREER, P. J.

At the trial it appeared that the material portions of the lease were as follows :

" That the lessor, in consideration of one dollar, the receipt of which is hereby acknowledged, and of other valuable considerations, does hereby demise and grant unto the lessee, his heirs and assigns, all the oil and gas in and under the following described tract of land, and also the said tract of land for the pur pose and with the exclusive right of operating thereon for said oil and gas, together with the right of way, to have and to hold the same unto the lessee, his heirs and assigns, for the term and period of two (2) years from the date hereof, and as much longer as oil and gas is found in paying quantities thereon ; yielding and paying to the lessor the one-eighth part of all the oil produced and saved from the premises, delivered free of expense into tanks or pipe-lines to the lessor's credit, and should any well produce gas in sufficient quantities to justify marketing, the lessor shall be paid at the rate of two hundred dollars per year for such well so long as the gas therefrom is sold.    In case no well shall be commenced on the above described prem ises within thirty days from the date hereof and prosecuted with due diligence to completion this lease shall become null and void and without any further effect whatever.    It is hereby further agreed if a well is found to produce oil in paying quantities that the lessee shall surrender the east twenty-five acres of the within described premises unless he will pay as much money as bonus on said twenty-five acres as any other bona fide purchaser."

A well was drilled on the premises in the summer of 1891 and gas was obtained in paying quantities.    The owner of the lease paid the rental to Double, up to the 1st of November, 1892, the amount of the rental then due by the terms of the lease.    It was admitted by defendant, The Union Heat and Light Company, that it became the owner of the lease and well on December 19, 1892 ; it went into possession and marketed the gas

from the lease and well from that date up to June 1, 1893; it then disconnected its lines from the well, but remained in possession of the lease and well at the time of the bringing of suit in this case, on February 4, 1894, and still remains in possession of the same; a second year's rental was alleged to be due on the lease on the 1st day of November, 1893, and suit was brought on February 4, 1894, to recover the year's rental.

Defendant presented inter alia the following point:

5. That under the proofs and evidence in the case, plaintiff is not entitled to recover a full year's rental, but only such part thereof as defendant actually used or sold the gas from this well. *Answer:* That we would affirm if they had given the notice that they had terminated the lease, but until they give notice that they have terminated the lease the defendant must pay the rental. This point is affirmed with that qualification. They are only liable for such time as they use the gas and give notice they will use it no longer. [9]

Verdict and judgment for plaintiff $117.57. Defendant appealed.

*Error assigned,* among others, was (9) above instruction, quoting it.

*S. F. Bowser,* for appellant.—It was the evident intention of the parties, that at any time the gas from a well did not justify marketing, the lessee could rid himself of liability by ceasing to use it, and no presumption would or could arise at any time in law or otherwise to the contrary. The very essence of the covenant itself negatives such presumption.

*Everett L. Ralston, John B. Greer* with him, for appellee.— The defendant company had power to terminate the lease by surrendering up the lease to Mr. Double or by abandoning it at any time after when it found it would not pay to continue it: Nesbit v. Godfrey, 155 Pa. 251.

If the company kept possession and title to the lease, the plaintiff had a right to expect that he would be paid the rentals up to the time the company abandoned the lease or surrendered it up to him, and yet it has done neither.

OPINION BY MR. JUSTICE GREEN, January 6, 1896 :

The definite term of the lease in question ended by its own limitation on May 4, 1893, being two years from its date, May 4, 1891. After that the lease was to continue, "as much longer as oil and gas is found in paying quantities therein." No oil was found but gas was found in paying quantities, and then the rental clause became operative, to wit, "and should any well produce gas in sufficient quantities to justify marketing, the lessor shall be paid at the rate of two hundred dollars per year for such well so long as the gas therefrom is sold." The defendant having purchased the original lease and taken possession of the premises and well on December 19, 1892, operated the well after that time and marketed and sold the gas produced until June 1, 1893, when they disconnected the line, ceased to produce gas and so notified the plaintiff. The defendant offered to pay $88.89 to the plaintiff, being all that they admitted to be due up to the time they ceased to operate the well. This was declined by the plaintiff who claimed that as the defendant had entered upon the third year of the lease, and had not terminated the lease by any notice to that effect, and had not surrendered or offered to surrender the lease or the possession of the premises, they were liable to pay for another year or at least until the lease was terminated by the act of the defendant, and a surrender of the lease and the premises had taken place. The learned court below instructed the jury in accordance with this view of the case, and as we think correctly. In our judgment the case is controlled by our decision in Nesbit v. Godfrey, 155 Pa. 251. There the lease was for oil and gas purposes and was for a definite term of twenty-one years, "and so long thereafter as oil or gas shall continue to be found therein in paying quantities." By another clause of the lease the lessee was empowered to terminate the lease in the following words : "It is hereby agreed that at any time the said Godfrey and Clark find it will not pay them to continue this lease they are hereby empowered to declare the same null and void and to be immediately released from any and all responsibilities herein." The lease was dated on June 12, 1890, and was fixed at a rental of $75.00 per year payable in advance. On June 12, 1891, the lessees notified the lessor that they elected to terminate the lease. The plaintiff claimed that the first year had expired when the notice was

given and that the defendants had entered upon the second
year and therefore she was entitled to another full year's rent.
The court below gave judgment in her favor and we sustained
the judgment on the opinion of the court below. The court
below said in their opinion, " The question is whether or not
on June 12, 1891, the defendants had entered upon their second
year under the lease. We think the case is ruled by the cases
of Lysle v. Williams, 15 S. & R. 136, and Marys v. Anderson,
24 Pa. 272. There is no substantial difference between the
expressions used here and in those cases. The words are used
not merely by way of computation, but a present interest is to
commence from the date." There is no such narrow question
of time in this case and the decision is cited for the proposition
that if a tenant wishes to avail himself of a privilege which he
possesses of terminating the lease by his own act, he must do it
before he has entered upon another year of his term. In this
case the tenant having the right to terminate the lease by a
notice to that effect gave no such notice until several months
had elapsed after the production of gas was stopped, and nearly
a year had elapsed after they took possession and began to oper-
ate the well. The appellant's contention that the mere cessa-
tion of the use of the gas from the well terminated the lease of
its own force and relieved the defendant from any further duty
to the plaintiff, is entirely untenable. If the defendant desired
to be relieved from the obligation of the lease, and the contin-
gency had arrived when they could claim the benefit of such
release, it was their plain duty to notify the plaintiff that the
well had ceased producing gas in paying quantities, and that
therefore they terminated the lease and surrendered it. Not
having done so the lessor would have no knowledge of their
intention, he could not re-enter upon the premises to determine
the truth of their assertion as to the cessation of the gas, or to
relet it to another tenant. He was certainly entitled to notice
of the termination of the contract relation so that he might re-
sume his rights and protect his interests. Instead of that the
lessee continued in possession, never surrendered the lease or
offered to do so, and remained in full possession up to the time
of the trial. The assignments of error are not sustained.

Judgment affirmed.