# Shrader *v.* T. W. Phillips Gas & Oil Company, Appellant.

*Lease—Oil and gas lease—Rental—Payment.*

Where a gas lease provides that the rental named should apply only to a well "from which gas is marketed," and that the rent named was "to be paid quarterly while marketed," the lessee is not relieved from paying rental during a summer quarter because he does not actually deliver gas to customers during that quarter, although he mines it and holds it in reserve in his lines and wells to await the increased consumption in colder weather.

Argued May 10, 1910. Appeal, No. 171, April T., 1910, by defendant, from order of C. P. Butler Co., Dec. T., 1908, No. 83, making absolute rule for judgment for want of a sufficient affidavit of defense in case of

56 SHRADER *v.* PHILLIPS GAS & OIL CO., Appellant.

A. C. Shrader v. T. W. Phillips Gas & Oil Company. Before HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit for rental.    Before CRISWELL, P. J., specially presiding.

The opinion of the Superior Court states the facts.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*Clarence Walker,* for appellant.

*John M. Greer,* with him *John B. Greer* and *Thomas H. Greer,* for appellee, cited: Nesbit v. Godfrey, 155 Pa. 251; Double v. Heat & Light Co., 172 Pa. 388; Wilson v. Philadelphia Co., 210 Pa. 484.

OPINION BY HEAD, J., July 20, 1910:

By a written lease, dated May 8, 1902, the plaintiff demised unto the defendant company, or its predecessor in title, the exclusive right to drill and operate for oil and gas on a tract of land in Armstrong county containing 156 acres.    The term of said lease is first definitely fixed at a period of five years, but this term could be extended under the conditions described in the following language: "and as long thereafter as oil or gas is produced in paying quantities or active operations for oil or gas are being conducted thereon."    The term as first described had expired before the cause of action in this case arose, and had it not been for the provision quoted, the rights of the defendant under the lease would have long since been at an end.    As the defendant contends that it is still lawfully in possession of the land, of the gas well which has been drilled thereon, and of the gas produced thereby, it thereby asserts that the lease is still operative under the conditions quoted.    It is still, therefore, in the possession and enjoyment of the leased estate, and it would seem naturally to

follow that its liability to pay the rent reserved in the lease still continues.

The amount of rent to be paid and the times of payment, under the conditions thus existing, are declared in the following language of the lease: "Should any well not produce oil but produce gas, and the gas therefrom be sold off the said premises, the consideration to the party of the first part for the gas from each well from which gas is marketed shall be at the rate of $300.00 per annum to be paid quarterly while marketed." All of the rentals due under the lease, it is agreed, had been paid down to May, 1908. When the first quarter of the year then beginning had expired, as the defendant continued to hold the leased premises and to assert that the lease was in full life, the plaintiff demanded the share of the annual rental then due, and, upon the refusal of the defendant to pay, brought this action to recover.

The defendant filed an affidavit of defense setting up substantially these facts: That it is a corporation engaged, inter alia, in the production and supply of natural gas. That in the conduct of its business it furnishes its gas to domestic consumers in a number of large towns of several adjacent counties. That during the winter months its consumers use large quantities of gas which it must be able to supply. That during the summer months this demand is so greatly reduced that it must hold in reserve in its lines and wells considerable quantities of gas to await the return of colder weather and a consequent increase in consumption. That because of this state of facts it was not marketing the gas of the plaintiff, within the meaning of the lease, during the quarter sued for, and therefore was not liable to pay any rent for that period. The learned court below, being unable to perceive in these facts a legal defense to the claim of the plaintiff, made absolute a rule for judgment, and the defendant appeals.

It will be observed in the first place that the term of the lease was a period of years, to wit, five years. That the rental fixed in case gas was produced in paying quantities

was an annual rental, to wit, $300. We may concede that at the beginning of each recurring year the defendant would have the right to determine in good faith whether or not the term of the lease should be extended for another year. Having determined that it should so extend, we are of the opinion that the true construction of this lease, in accordance with sound reasoning and precedents, fixed its liability to pay during that year the annual rental mentioned, of course, in the manner provided by the lease: Lysle v. Williams, 15 S. & R. 135; Marys v. Anderson, 24 Pa. 272; Nesbit v. Godfrey, 155 Pa. 251; Double v. Heat & Light Co., 172 Pa. 388.

It was entirely within the power of the parties to so provide that the lessee might be absolved from the payment of rent during any given year, or any quarter of that year, under conditions agreed upon, without destroying the existence of the demised estate. As we understand the contention of the defendant, this is precisely what happened. It is urged upon our attention that the lease provided that the rental named should apply only to a well "from which gas is marketed," and that the rent named was "to be paid quarterly while marketed." We are asked to draw from these expressions in the lease the legal conclusion that the defendant had the right to so arrange its business as to thus compel the plaintiff to carry, without expense to it, the portion of its stock of surplus gas which it could not market to advantage during the warm months but could sell with profit during the cold months. The result of this would be that the plaintiff was fully performing all of the covenants of his lease, presumably in consideration of the rental thereby reserved, but that by reason of the manner in which the defendant, for its own advantage, had arranged its business, it could enjoy all the fruits of the lease, take all of the gas produced by the well on the demised premises, take it when it was most profitable for it to take it and at the time when it chose to take it, and yet escape with the payment of one-half the annual rental reserved.

The defendant does not aver that there was no market for natural gas during the period sued for. It does not allege that consumers could not be found, manufacturers or others, to whom it could sell the gas during the summer months. It does say that it chose to select a certain class of those in the market for gas which alone it would supply, to wit, domestic consumers. But we do not think the plaintiff, in law or in right, was bound by this voluntary action of the defendant. The latter, under its lease, could utilize the gas as it chose. As between it and the plaintiff, the gas was marketed when it took it. Had it been obliged, in the conduct of its business, to consume a quantity of gas under its own boilers to operate its pumps or other machinery, and utilized the gas from this well for such purpose, it could hardly be contended, from the standpoint of the plaintiff, that his gas was not being marketed and that he was not entitled to his rental. Or again, if the defendant was obliged to supply, without compensation, certain public buildings, and utilized the gas from this well for such purpose, in relief of its other supplies, the same conclusion would follow. We repeat, the defendant had the right to organize its business as it chose and conduct it in any manner that would best subserve its own interests and was not forbidden by law. If, in thus conducting its business for its own advantage, it saw fit to utilize the gas of the plaintiff one month by consuming it itself, another month by selling it to other consumers, and still another month by holding it in reserve until market conditions were more favorable to its interests, all of these things it had a right to do. But it seems to us that neither reason nor authority, nor indeed the dictates of natural justice, as we perceive them, would sanction the theory here advanced by the defendant.

We are of opinion, therefore, that the facts averred in the affidavit of defense disclosed no legal bar to the plaintiff's demand and the learned trial judge was right in making absolute the rule for judgment.

Judgment affirmed.