## CONTINENTAL OIL CO. v. OSAGE OIL & REFINING CO.
### No. 558.

Circuit Court of Appeals, Tenth Circuit.
March 14, 1932.

Robert F. Armstrong, of Ponca City, Okl. (Wm. H. Zwick, of Ponca City, Okl., and Ray S. Fellows, of Tulsa, Okl., on the brief), for appellant.

W. F. Wilson, of Oklahoma City, Okl. (J. E. Whitehead, of Dallas, Tex., and W. F. Wilson, Jr., and R. E. Owens, both of Oklahoma City, Okl., on the brief), for appellee.

Before LEWIS, COTTERAL, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

This is an appeal from an order of the trial court denying an application for leave to file a tendered supplemental bill directed at a decree rendered herein in April, 1927. That decree was based on a contract by which appellant agreed to purchase a one-half interest in an Osage oil lease for $50,000, if the Secretary of the Interior approved assignments of the half interest to it. The assignments and the $50,000 were in the possession of the clerk of the court. The decree enjoined upon appellant the duty of co-operating with appellee in securing the approval of the secretary to the triplicate assignments which were tendered into court by appellee. Under the Osage regulations, a prerequisite of such approval is that the assignee accept the assignments in writing. If such assignments were approved, and if good title was tendered within thirty days after the decree became final, the clerk was directed to pay the $50,000 to appellee; otherwise, to appellant.

The supplemental bill alleges that the appellee neglected to operate the lease pending an appeal, as directed in the decree; that, by reason of· such neglect, the lease ceased to produce oil in paying quantities and expired according to its terms; that the secretary declined to approve the assignments; and that the appellee failed to tender good title thereto. The prayer of the bill is that the clerk be directed to pay the $50,000 to appellant.

By that decree, the appellee's title to the lease was quieted against the claims of one Axelrod. Both the appellant herein and Axelrod appealed from such decree, but neither superseded it pending appeal. The decree was affirmed in toto on November 8, 1928, and the mandate spread of record on January 16, 1929. Axelrod v. Osage Oil & Refining Co. (C. C. A. 8) 29 F.(2d) 712. Seventeen days thereafter the appellant filed in the court below a motion asking that "the decree be modified so as to relieve the defendant from the. obligation to purchase from plaintiff any interest in said purported oil lease." The principal ground assigned was that on December 22, 1928, the superintendent of the Osage Tribe had served a notice on Axelrod and appellant that the lease had terminated on October 31, 1928. The motion also stated that there was a mortgage on the lease, but since the motion was filed while appellee still had thirteen days in which to clear the title, that ground of the motion could be no more than a make weight. This effort to be relieved of the decree by a motion in the trial court was abortive. Osage Oil & Refining Co. v. Continental Oil Co. (C. C. A.) 34 F.(2d) 585, 589. In that opinion this court said: "It is our opinion that the only power possessed by the United States District Court for the Northern District of Oklahoma over the decree of April 29, 1927, affirmed by the Circuit Court of Appeals for the Eighth Circuit, is the power to enforce its execution and it should exercise such power unless the Continental Company, within a reasonable time hereafter, obtains leave from such United States District Court to file a supplemental bill setting up facts which, in the judgment of such court, entitles the Continental Company to be relieved from the duty enjoined on it by the decree of April 29, 1927, to purchase a one-half interest in the lease. In which event, issues should be made up and that cause regularly heard and disposed of."

Upon the coming down of that opinion, the appellant applied to the trial court for permission to file the supplemental bill to which we have referred. The appellee filed a response to such application, challenging generally the right to the relief sought and specifically alleging that the appellant had made no effort to secure the approval of the Secretary of the Interior to the assignments tendered, as required by the decree, but, on the contrary, had exerted every effort to induce the secretary not to approve such assignments and to induce him to terminate the lease; that the appellant was estopped from relying upon a state of affairs which it had brought about in an effort to evade the decree

of the court; that it could not ask equity because it had not done equity.

Upon the issues so joined, there was a trial, at which the court received all the proof tendered; at the conclusion thereof the trial court, exercising the judgment committed to it by the former opinion of this court, denied the application. The single question before us is, Did the trial court abuse the discretion confided to it?

Appellee has filed a motion to dismiss the appeal on two grounds: (1) That the order is not appealable; and (2) that during the proceedings the Continental Oil Company of Delaware was superseded by the Continental Oil Company of Maine, with no order of substitution. The motion is not well taken. The latter point is highly technical, to say the least, and we find that there was an informal substitution in the trial court. On the first point, we think the order was a final one. An order granting leave to file a supplemental bill is not final nor appealable; if an adverse judgment results, an appeal lies from the judgment, and on that appeal the court's ruling on the application to file may be assigned as error. But an order denying leave to file a supplemental bill is final, at least in a case where relief can be granted only by a supplemental bill. That is this case, for in an independent action the appellant would be foreclosed by the original decree herein. The law is as stated by appellant, that: "An application for leave to file a supplemental bill is addressed to the discretion of the court, and the ruling thereon will not be disturbed on appeal unless the discretion has been abused." General Inv. Co. v. Lake Shore Ry., 260 U. S. 261, 281, 43 S. Ct. 106, 115, 67 L. Ed. 244.

A bill seeking to restrain or avoid a final decree after it has been enrolled is a bill of review. Foster's Fed. Prac. § 446 et seq.; Simmons Co. v. Grier Bros. Co., 258 U. S. 82, 89, 42 S. Ct. 196, 66 L. Ed. 475. Mr. Justice Story, speaking of such, many years ago, said: "It may be refused, therefore, although the facts if admitted would change the decree, where the court, looking to all the circumstances, deems it productive of mischief to innocent parties, or for any other cause unadvisable." Dexter v. Arnold, Fed. Cas. No. 3,856, 5 Mason 303, 305.

This language has been crystallized into a rule of practice. Ricker v. Powell, 100 U. S. 104, 107, 25 L. Ed. 527; Craig v. Smith, 100 U. S. 226, 233, 25 L. Ed. 577; Thomas v. Brockenbrough, 10 Wheat. 146, 6 L. Ed. 287; Wood v. Mann, Fed. Cas. No. 17,953, 2 Sumn. 334; Hopkins v. Hebard (C. C. A. 6) 194 F. 301, 309; Swift v. Parmenter (C. C. A. 8) 22 F.(2d) 142; Story's Eq. Pleading (9th Ed.) § 338; Id. (10th Ed.) § 417. See, also, Fraenkl v. Cerecedo, 216 U. S. 295, 30 S. Ct. 322, 54 L. Ed. 486; Beers v. Equitable Trust Co. (C. C. A. 8) 286 F. 883. The reason why the trial court is vested with such discretion is not far to seek, for if a defeated litigant could, as a matter of right, file a bill to relieve him of the judgment, and demand a trial thereon, an intolerable situation would result. In any event, this entire proceeding is in equity; the application for leave to file the tendered bill, and the response thereto, raised the pivotal issues of whether appellee or appellant was responsible for the termination of the lease, and the question of estoppel. Upon those issues, full opportunity was given to explore the facts, as apparently was done. There is no reason why this court should not proceed to a determination of the rights of the parties. This will require an examination of the facts.

On July 22, 1918, the Osage Tribe executed the lease in controversy to appellee; its term was for five years "and as long thereafter as oil is found in paying quantities." It provides that it shall be subject to regulations now or thereafter prescribed by the Secretary of the Interior, and that he shall have power to cancel the lease for violation of its terms or conditions, after notice and hearing; it provides that if a well becomes unprofitable, the parties may mutually agree as to future operations.

In 1925 Axelrod purchased the lease at a sheriff's sale. In February, 1926, she agreed to assign a one-half interest therein to appellant for $50,000 in cash and $50,000 in oil. The $50,000 in cash was escrowed, pending the outcome of the litigation involving the title, and is the $50,000 now in dispute. By that contract, appellant agreed to drill a well and assume the "control, superintendence, and management of said leasehold estate." An appeal was then pending in the Supreme Court of Oklahoma from the decree of foreclosure which culminated in the sheriff's deed to Axelrod. In April, 1926, the appellee filed a suit to enjoin Axelrod and appellant from recording transfers of the lease. This move was unsuccessful, and the title was transferred on the Osage records to Axelrod and the Continental. In November, 1926, the state Supreme Court held the sheriff's deed void. Axelrod would not yield to this holding, claiming she was not a party to the appeal. Appellee then brought this suit to bar Axelrod, and to hold the ap-

pellant to its offer, made in the pleadings in the 1926 suit, to abide by its contract with whichever claimant was found to be the owner, whether it be appellee or Axelrod.

■ In April, 1927, the trial court found that the appellant was bound to appellee to perform its obligations under its contract with Axelrod. That contract required appellant to "forthwith submit" the assignment to the secretary for approval, and upon such approval appellant was entitled to possession and management of the lease. This is the decree from which relief is herein sought. Among other things, it provides: "Should the defendant, The Continental Oil Company, appeal from this decree and refuse to accept the said assignments and refuse to ask for the approval thereof by the Secretary of the Interior and refuse possession of said leasehold estate, then in that event, the plaintiff shall remain in possession of the said property, and shall operate the same for and on behalf of the defendant, The Continental Oil Company, and upon an affirmance of this decree that this court shall then adjust the account of the plaintiff for operating expenses as between it and the said defendant, The Continental Oil Company."

The Continental appealed, without supersedeas, and the decree was affirmed in 1928. The affirmance reached back to the inception of the agreement and was a final adjudication that the appellant was obligated to undertake to secure the approval of the assignments and to pay for and operate the lease when such approval was secured and good title tendered. Lehnen v. Dickson, 148 U. S. 71, 79, 13 S. Ct. 481, 37 L. Ed. 373.

■ We start then with the proposition that since 1927, at least, the appellant has been obligated to endeavor to secure the approval of the assignments to it, and if secured, to pay appellee $50,000 if good title to the lease was tendered. The appellee cannot be deprived of the benefits of that decree unless it was at fault, as alleged in the supplemental bill. Appellant suggests in the briefs that the mere fact that the lease expired is enough; that the subject-matter of the decree no longer exists; there can be no approval of a nonexisting lease, and without such approval the appellant is entitled to the return of the $50,000 under the decree. But this was not true when the obligation of appellant's contract attached; it was not true when the 1927 decree was rendered, for the lease was then producing oil; at that time, the lease was in substantially the same condition as when the appellant made its con-

tract with Axelrod, which the secretary approved. The appellant had an absolute right to appeal; but if it chose to appeal without supersedeas, it assumed the risk of affirmance, with the attendant results, one of which is that the decree was binding upon it from the date of its rendition. It also assumed the risks incident to ownership, one of which is the destruction of the subject-matter. For example, if the appellee had expended its moneys in operation of the lease, oil might have ceased to flow and the lease might have been terminated. It could not seriously be asserted, under such circumstances, that the appellant was relieved of its obligations under the decree. The risks of ownership fall upon the unsuccessful appellant and not the successful appellee, where an appeal without supersedeas is taken from a decree of specific performance.

But this is not the issue tendered, either by the application to file the supplemental bill, or by the bill itself. Both set out that appellee failed to carry out the decree; the application then states "by reason of such failure and default on the part of said plaintiff, the lease involved in this case has terminated"; the bill alleges that "by reason of the failure to operate the above leasehold estate by the Osage Oil & Refining Company after the original decree of this court of April 29th, 1927, said lease was by such company allowed to terminate." Passing by, for the present, the question of whether the lease was terminated prior to the action of the secretary in February, 1930, we proceed to the issue tendered by the application and the bill, Was the lease terminated by the failure and default of appellee to comply with the decree? The appellant's contention is that the decree required appellee to operate it pending the appeal, and if it had done so, the lease would not have expired. We examine this contention with a view of ascertaining whether appellee was at fault, and if so, whether that fault was the cause of the termination of the lease.

■ Upon the coming down of the decree in 1927, the Continental had the option of (a) compliance, or (b) appealing with a supersedeas, or (c) appealing without. This controversy has arisen because the appellant exercised the last of these three options. The decree provides that the appellee shall operate the lease "for and on behalf of" the appellant. That is, the appellee should operate as agent for the appellant. What is the obligation of an agent to its principal, under such circumstances? Is it one of insurance, or one of reasonable diligence? Mr. Mechem

states the rule succinctly: "But the agent is, in all cases, bound to act in good faith, and to exercise reasonable diligence, and such care and skill as are ordinarily possessed by persons of common capacity engaged in the same business." Mechem on Agency (2d Ed.) § 1279.

The appellant claims that its agent should have gone into possession and expended its own money in further development of this lease, the one well thereon having about played out. But on the Osage records, the appellee was a stranger to the title, the title standing in the name of Axelrod and the appellant, although appellee had prosecuted a suit to prevent such change. The Osage regulations (No. 31) provide that no operations shall be permitted until a lease has been approved, unless the secretary specifically authorizes it. It is said that appellee should have applied to the secretary to change the records. It is extremely doubtful if such application would have been granted pending the appeal. This record discloses that the general policy of the Interior Department was not to act until a final decision of the courts, although it had done so pending the appeal to the state courts. Due diligence did not require the appellee, with its own funds, to endeavor to induce the department to depart from its settled policies.

But assume that the appellee could have secured possession, by legal process or otherwise. What then? Expenditures of considerable sums of money would have been required to operate it. Where was the money to come from? The appellant made no offer to furnish it. In its brief in this court, appellant suggests the absurdity of requiring its advancing money while Axelrod was litigating the title. It says: "It would be a stringent rule, indeed, which would require the purchaser, in the absence of some express provision in the contract, to expend money on the property at a time when the seller was unable to deliver good title." If it is a stringent rule that would require a losing litigant to risk its money to preserve the property pending appeal, it is a much more stringent rule that would require the prevailing litigant to risk its own money to preserve the property for the benefit of the loser. Nor is there proof that if appellee had expended its own moneys for the benefit of a defaulting buyer, that the lease could have been saved by the production of oil in paying quantities.

We conclude, on this branch of the inquiry, and upon the face of the records and the undisputed facts, that no obligation rested upon the appellee to expend its own money in an endeavor to secure possession of the lease and in its operations. The decree awarded appellee possession and directed it to operate the lease "for and on behalf of" appellant. But the decree did not, and should not, have directed it to advance funds for the benefit of the defaulting buyer. The appellant, by its tendered bill and its evidence, does not establish any such fault on the part of the appellee as would justify a court of equity in wresting from it the relief granted by a final decree.

But there is an additional reason, even more persuasive, why appellant is not entitled to relief. One who seeks equity must do equity. Offset wells were draining this lease; oil dropped in price; and from that time on, appellant has exhausted every effort to avoid complying with its agreement. Its contract required it to submit the assignments to the secretary for his approval. Under departmental rules, the assignee must accept the assignments in writing before the secretary will approve. The appellee tendered into court, in 1927, assignments found to be in proper form; the court decreed that appellant and appellee should cooperate in securing that approval. These were not idle words; this court has construed them as imposing upon appellant the duty "to make an honest effort to secure their approval by the Secretary of the Interior." When that decree was affirmed, the appellant should have complied with it. It did not do so. It declined to sign its acceptance on the assignments; it rejected other assignments tendered on hypercritical grounds; it made trivial objections to tendered releases of liens. In June, 1929, it filed a brief in this case in which it boastfully said: "It is likely that we have thwarted plaintiff in its efforts to have the Secretary of the Interior approve assignments to the Continental Oil Company, because we have refused to execute acceptance of such assignments and submit the same."

Even after this court had declared that it was its duty to make an honest effort to secure approval, it declined even to sign the assignments until the trial court specifically ordered it so to do. After signing, however, it persisted in its effort to defeat the approval; it employed counsel in Washington, and made an unsuccessful fight before the Commissioner of Indian Affairs; it succeeded in

getting the Secretary of the Interior to reverse the commissioner and disapprove the assignments. When the Supreme Court of the District of Columbia mandamused the secretary to approve them, it filed a brief as amicus curiæ in the Court of Appeals in support of a reversal. The appellant employed counsel in Washington, D. C., on February 18, 1929, and from then until the decision of the Court of Appeals of the District of Columbia on November 9, 1931 [Wilbur v. United States, 60 App. D. C. 326, 54 F.(2d) 437], such counsel were diligent in their efforts to prevent the approval of the assignments by the secretary, and to induce him to declare the lease terminated. In May, 1929, the appellant resisted an application which the appellee made to the secretary for permission to go into possession and operate the lease pending the litigation. In short, appellee did all it could to secure a recognition of the lease, and an approval of the assignment; the appellant did everything it could to prevent it. The record in this case, from appellant's own witnesses, leaves not the slightest doubt that the appellant, instead of co-operating in securing the approval of the assignments as required by the decree from which it seeks relief, opposed the approval at every step. Its only defense to this disobedience of a final decree is that if the secretary would adjudge that the lease had expired, then there was no lease of which he could approve assignments. So it set about to convince the secretary that the lease had expired. But that is no excuse, and no way for citizens to treat final decrees of court. Its duty was plain; it should have made an honest effort to secure the approval; if it failed, then the decree against it was not operative by its terms. If it had succeeded, and had undertaken to operate the lease as the decree required, and the Osage Tribe had objected because the lease had expired, we would have a different lawsuit. The appellant has not done equity, and is in no position to ask that equity be done it. It may be put in another way: To entitle a litigant to bring a bill of review, it is necessary that he shall have performed the decree, unless the performance would extinguish his right. Foster's Fed. Prac. (6th Ed.) § 449; 4 Cyc. Fed. Proc., § 1153. Appellant would have lost no right by an honest effort to secure the approval of the secretary to the assignments; true, if he had approved, it would have owned the interest in the lease it contracted to buy; but to own what one agreed to buy is not a legal injury. All that appellant can claim on this point is, that if it had obeyed the decree, there would have been no basis for this supplemental bill; but that is to base its prayer for relief upon its own default, which equity cannot countenance.

Appellee's claim of estoppel is likewise well taken. We need not inquire whether an Osage lease terminates when wells thereon cease production, or whether the failure of a producing well gives the lessor a right to cancel. Summers on Oil and Gas, p. 481; Double v. Heat & Light Co., 172 Pa. 388, 33 A. 694. It is clear that the lessor may waive the right, as for example, by permitting the lessee to expend money in further development. In fact, the secretary did recognize the existence of this lease as late as April 20, 1929, by directing that the records be changed "so as to show record title in the lease to be in" appellee. In the case at bar, the secretary had the same power to approve of the assignments as he did to disapprove them. If the secretary had seen fit to consider the circumstances attendant upon the failure of the appellee to operate, adverted to in our former opinion, and had approved the assignments, no one could have questioned his act. He saw fit to find the lease had expired and disapproved the assignments. But he was ably abetted in his course by appellant. As said by one of appellant's counsel, their purpose was to convince the secretary that the lease had expired, and the assignments should not therefore be approved. The failure to produce oil was the reason for the secretary's action; but in truth and fact, the reason that the lease no longer exists is because the secretary took the action which he did. The question is therefore a very simple one: Should the appellant be relieved of its obligation because the secretary has held that the lease expired when the appellant was active in inducing him to so hold? We think not; we think the most elemental principles of fair play require the holding that appellant is estopped to set up a state of affairs which it has itself brought about. Transcontinental Oil Co. v. Thomas (C. C. A. 5) 29 F.(2d) 733. To hold otherwise would be to permit a defaulting buyer to be relieved from a decree of specific performance on the ground that the house burned pending appeal, notwithstanding that he himself had done all in his power to see that it did burn.

There is no need to explore the matter further. The records disclose that the termination of the lease cannot be charged to any dereliction of the appellee; on the contrary, it was brought about by activities of

the appellant which were in violation of a final decree. The supplemental bill that was tendered mentions liens on the lease; since the lease has been terminated, the question of liens thereon is moot; furthermore, the record on the prior appeal of this case disclosed that valid releases of all liens had been tendered. Whiting v. United States Bank, 13 Pet. 6, 13, 10 L. Ed. 33; National Fire Ins. Co. v. Thompson, 281 U. S. 331, 336, 50 S. Ct. 288, 74 L. Ed. 881; Morse v. Lewis (C. C. A. 4) 54 F.(2d) 1027.

Five years have elapsed since it was first decreed that the appellant had agreed to purchase this lease; more than three years have elapsed since that decree was affirmed. That is long enough. The order of the District Court denying leave to file the supplemental bill is affirmed; and the case is remanded with instructions that the District Court enter its order directing its clerk to pay over the $50,000 and accumulated interest, if any, to the appellee or those lawfully claiming under it. All the costs of this litigation, here and in the court below, including the impounding fee, are taxed to the appellant.

Remanded, with instructions.