## HALTEN v. McKENNA.

### No. 459.

Municipal Court of Appeals for the District of Columbia.

Feb. 11, 1947.

Charles J. King, of Washington, D. C. (Philip Wagshal, of Washington, D. C., on the brief), for appellant.

Benjamin Prager, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD, and CLAGETT, Associate Judges.

HOOD, Associate Judge.

Plaintiff sued the defendant, a licensed real estate and business chance broker, for the balance of the proceeds due from an alleged sale of plaintiff's rooming house business, consisting of furniture, furnishings and good will. The circumstances surrounding the alleged sale were as follows: In March 1943 plaintiff employed defendant to sell plaintiff's rooming house business on a 10% commission basis. At that time the business was subject to a chattel first deed of trust securing a note payable to one Alice Hacking, hereafter referred to as the "Hacking note." Defendant was the trustee under this deed of trust. There was also a second deed of trust securing a note payable by plaintiff to one Martha Nichols. Defendant was the

agent of Martha Nichols for the collection of this note, hereafter referred to as the "Nichols note," and at the same time was agent, for collection of rent, of the owner of the real estate in which the rooming house business was located.

Shortly after his employment defendant presented to plaintiff a contract of sale of the business for $3,500. This contract had previously been signed on behalf of the purchaser by the purchaser's wife in the following manner: R. W. Hyre by Mrs. R. W. Hyre. By the terms of this contract, the purchaser was to pay $1,000 on the day of settlement, was to assume the "Hacking note" on which there was a balance of $550, and was to execute a note for $250 payable in thirty days after settlement. For the balance of $1,700, the purchaser agreed to execute a note to be secured by a chattel deed of trust. On his part, the plaintiff agreed to pay the "Nichols note." Plaintiff signed this contract of sale.

When plaintiff went to defendant's office to make settlement in accordance with the contract, Mrs. Hyre, wife of the purchaser, was present as was a notary public. Mrs. Hyre signed the notes and the chattel deed of trust and endorsed the "Hacking note" in the following manner: "R. W. Hyre by Mrs. R. W. Hyre." The notary public refused to take her acknowledgment to the deed of trust as it was not signed by the purchaser but by her in the name of the purchaser.[1] Plaintiff inquired of the defendant whether the deal was off, but was told by him that such was not necessary as he would secure the papers properly executed. Whereupon, Mrs. Hyre stated that she had authority to proceed with the transaction and authorized defendant to disburse the $1,000 if she could get possession. Although defendant advised him to wait until the signatures had been obtained, plaintiff signed a bill of sale and authorized Mrs. Hyre to take possession. Thereupon, defendant disbursed the $1,000 as follows:

$255.65 was deducted in payment of the "Nichols note"; $350 was retained by him as his commission, and $394.35 was paid to plaintiff. At this time, defendant gave plaintiff a receipt for the two notes, one for $250 and the other for $1,700, said notes to be left with defendant "for collection." Shortly thereafter, Mr. and Mrs. Hyre took possession.

Subsequently after several attempts defendant was able to find Mr. Hyre at his home, the premises in question. Defendant gave the two notes and the chattel deed of trust which had been signed by Mrs. Hyre as well as the "Hacking note" to Mr. Hyre. Previously, defendant had obliterated Mrs. Hyre's signature on the deed of trust. Mr. Hyre tore up the two notes signed by his wife, scratched out Mrs. Hyre's endorsement on the "Hacking note," and refused to sign the deed of trust or new notes.[2]

Defendant notified plaintiff of Mr. Hyre's action and thereafter took plaintiff to a lawyer who filed suit on behalf of plaintiff against Mr. Hyre on the $250 thirty day note. This claim was never reduced to judgment, but the suit is still pending. What rights, if any, plaintiff has against the Hyres, or either of them, for the balance of the purchase money is not before us.

After Hyre took possession he refused to pay rent for the premises and refused to pay the balance of the purchase price of the business. The premises were sold and the new owner evicted Hyre after he had been in possession about six months. At the time of the eviction the furniture and furnishings were placed on the sidewalk. Defendant, acting as trustee under the Hacking deed of trust, took possession of and sold the chattels at auction. From the proceeds of the auction sale, after paying expenses, defendant took a trustee's fee, paid the "Hacking note" and also paid some rent owing to the former landlord which had accrued after plaintiff had given up posses-

---

[1] Code 1940, 45—401: "No deeds of conveyance of either real or personal estate by individuals shall be executed or acknowledged by attorney."

[2] At a hearing before the Real Estate Commission, instituted on complaint of Hyre against McKenna, Hyre testified he tore up the papers and refused to execute new ones because McKenna had failed to fulfill a promise to secure a lease on the property for Hyre. McKenna denied making such a promise. The testimony before the Commission was introduced in evidence by plaintiff.

sion. At the trial, the balance of the proceeds, $78.64, was acknowledged by defendant to be due plaintiff. The court, sitting without a jury, gave judgment for plaintiff in the sum of $78.64, disallowing the other items of his claim. Plaintiff has appealed.

Plaintiff contends that the trial court erred in permitting defendant to retain the $350 commission on the alleged sale, and for permitting the deductions from the Hacking foreclosure by him as fees as agent and trustee for others than plaintiff. Plaintiff's approach to this case is in the alternative. He contends that if there was a sale, then he is entitled to judgment for the sum of the two notes, namely, $1,700 and $250, on the theory that defendant undertook their collection and that his carelessness and negligence caused the destruction of the notes. His alternative contention is that if there was no sale, then defendant was not entitled to the $350 commission.

As we see it, this factual situation involves two questions: (1) Was defendant entitled to the 10% commission, and (2) if there was a sale, did defendant exercise proper diligence and care as agent for plaintiff, and did he so represent adverse interests as to prevent him from retaining his trustee's commission under the Hacking foreclosure?

■ We think it is clear that there was a valid sale so as to entitle defendant to retain the 10% commission. The terms of the sale had been agreed upon. While the buyer did not sign the contract of sale, he had conducted the negotiations leading to its preparation and had authorized his wife to sign it for him. When the notes and deed of trust executed in the name of the buyer by his wife were tendered in settlement, the seller could have refused to accept them and to make settlement until papers executed personally by the buyer were presented. But, contrary to the broker's advice, the seller made full settlement on his part by delivering possession of the business to the buyer, and the seller accepted from the buyer the cash payment of $1,000, trusting the buyer to thereafter execute the papers. This transaction constituted a sale. When the parties were brought together on terms acceptable to the seller and a sale made, the broker had earned his commission. And the broker did not lose his right to the commission because of the misplaced confidence of the seller that the buyer would execute the required papers. That the seller himself recognized that the transaction constituted a sale is evidenced by the fact that he thereafter sued the buyer on the $250 note, a part of the consideration for the sale.

Our inquiry then must be directed to an examination of defendant's relationship with plaintiff immediately after the sale had been made. Was defendant careless and negligent in the performance of his duties as plaintiff's agent, and did he so represent adverse interests as to require him to turn over his trustee's fee to plaintiff?

■ Defendant owed plaintiff a duty to exercise the reasonable diligence and skill and care ordinarily possessed by persons of common capacity engaged in the same business. Continental Oil Co. v. Osage Oil & Refining Co., 10 Cir., 57 F.2d 527, certiorari denied, 287 U.S. 616, 53 S.Ct. 17, 77 L.Ed. 535. Whether an agent has exercised the proper degree of care, diligence and skill in the execution of his agency is ordinarily a question of fact. Milwaukee Nat. Bank v. City Bank of Oswego, 103 U.S. 668, 26 L.Ed. 417. The trial court evidently decided this question in favor of the defendant, and we see no basis for disturbing its findings.

■ We fail to see, as plaintiff contends, that defendant necessarily had interests adverse to his agency with plaintiff. Plaintiff knew at the time he appointed defendant agent for collection of the notes that defendant was trustee under the deed of trust securing the "Hacking note," and he did not object to defendant occupying that position. Plaintiff also knew that the rent on the real estate was payable at defendant's office, and that defendant might be the owner's agent for the collection of rent. Again, the matter of adverse interests was a question of fact for the trial court and in the absence of any evidence that the sale was improvidently held or improperly conducted, or that a fair price was not realized, we see no basis for hold-

ing that plaintiff was thereby injured or that defendant forfeited his right to a commission on the sale.

In this view of the case, it is unnecessary to consider the other errors assigned by plaintiff. The judgment must be affirmed.

Affirmed.